The STATE of Texas

v.

Rebekah Faith STANLEY, Stephen Jay Adams, Diana Rodriguez, John Bernard Wachsmann, Matthew Aaron Juntunen, Vincent Tyree Carpenter, James Byron Rodgers, Seth Paul Boutin, Ronald Eugene Holmes, Doel Gene Garcia, Brenda Sue Telles, Boyd Leon Leftwich, John W. Collier, Terry Lynn Dobbs, Dennis Wayne Bagby, Thomas Franklin Unger, and Kevin Ira Eby, Appellees.

Nos. PD–1393–05 to PD–1401–05.

Court of Criminal Appeals of Texas.

Sept. 20, 2006.

Christopher Taylor, Assistant County Atty., Waco, for Appellant.

Stephen M. Crampton, Esq., Tupelo, Matthew Paul, State's Atty., Austin, for State.

## OPINION

PRICE, J., delivered the opinion of the Court in which KELLER, P.J., and MEYERS, KEASLER, HERVEY and HOLCOMB, J.J., join.

These consolidated cases present the question whether the State may appeal an order dismissing a prosecution on the grounds that it proceeds upon an unconstitutional ordinance if the trial court delays its ruling until after both parties have submitted their evidence at the trial on the merits, but before the issue of guilt or innocence has been resolved. We conclude that the State may appeal such an order. We therefore reverse the judgment of the court of appeals, which held that it lacked jurisdiction, and remand the cause to that court to address the merits of the State's contentions on appeal.

### THE FACTS AND PROCEDURAL POSTURE

#### The Facts

The named appellee and sixteen co-defendants were gathered at the street entrance of a Planned Parenthood clinic in Waco where abortions were performed,

carrying signs and issuing leaflets to women seeking the services of the clinic. The clinic happened to be located across the street from a school. A few months previously, the city had promulgated an ordinance prohibiting "street activity" in school zones, such "activity" including but not limited to a "demonstration." Warned by the police that their efforts in front of the clinic violated this ordinance, the appellees persisted, and were issued citations. The cases were consolidated and tried to a municipal court, which convicted the appellees.

## In the Trial Court

In a consolidated trial *de novo* in the county court at law ("the trial court"), the appellees filed a motion to dismiss the prosecution on the grounds that the ordinance was unconstitutionally vague and overbroad, in violation of the First Amendment to the United States Constitution. The trial court declined to make a ruling on the motion during a pre-trial hearing, announcing at that time that "I will carry the motion along until we hear the trial on the merits." The appellees objected, but the State expressed its willingness to proceed without a ruling "until during or after the trial, itself, whatever you would like to do."

Trial on the merits, before the court, began a month later, and lasted only a day. On the morning of trial, the appellees filed a trial brief, reiterating their claim that the ordinance was unconstitutional. The State called a half dozen police officials and officers to testify about the circumstances of the issuance of the citations. The appellees cross-examined each witness primarily about his or her interpretation of the ordinance. At the conclusion of the State's case in chief, the appellees re-urged their motion to dismiss, but the trial court overruled the motion "at this time."

The appellees then proceeded to call three witnesses of their own, whose testimony also focused primarily on the meaning and application of the ordinance.

During its final argument to the court, counsel for the appellees argued exclusively that the ordinance was unconstitutional. Pointing out that even the officers issuing the citations had been unable to agree on the meaning of the ordinance, appellees' counsel urged the trial court to find it unconstitutionally vague. He also argued that the ordinance was so broadly worded that police officers could arbitrarily enforce it in such a way as to infringe upon the appellees' constitutional guarantees of free speech, and that it served no overriding public interest. Counsel stated in conclusion that "we would rest on the submission in our Motion to Dismiss, in conjunction with our trial brief," accusing the city of enacting "an ordinance to shut down [the appellees'] First Amendment conduct under the pretense of protecting the children." He never argued, however, that the appellees were not guilty of conduct that fell under the ambit of the ordinance. The trial court announced that it would "stand in recess while I consider this."

After a brief recess, the trial court announced that it would grant the appellees' motion to dismiss the complaints. Apparently signing a proposed order that the appellees had attached to their motion to dismiss or trial brief, the trial court read the "operative" paragraph of the order into the record, *viz:*

"It is ORDERED ADJUDGED, AND DECREED by the Court that all charges against the Defendant ... are in all things dismissed, and the Defendant and her sureties are in all things discharged from further liability." Signed this date by me.

The clerk's record contains just such a signed and dated order.

### In the Court of Appeals

■ The Tenth Court of Appeals dismissed the State's attempted appeal from this order in a published opinion.[1] The court of appeals acknowledged that the State is authorized to appeal an order dismissing a charging instrument under Article 44.01(a)(1) of the Code of Criminal Procedure.[2] And indeed, it is clear under our case law that the State may appeal a pre-trial order dismissing such a charging instrument on the grounds that the underlying statute is unconstitutionally vague.[3] Nevertheless, purporting to rely upon our subsequent opinion in *State v. Moreno*,[4] the court of appeals held that an order to dismiss the prosecution as based upon an unconstitutional statute must occur before the trial on the merits even commences, and thus jeopardy attaches, in order to be appealable by the State.[5]

Chief Justice Gray dissented. He argued that the plain language of Article 44.01(a)(1) allows the State to appeal the dismissal of a charging instrument without reference to the particular stage of the proceedings at which the dismissal occurs.[6] In addition, Chief Justice Gray pointed out that this Court held, in *Moreno* itself, that the legislative intent behind Article 44.01 was to permit the State to appeal under any circumstances in which the Double Jeopardy Clause of the Fifth Amendment would not prohibit a retrial should the State's appeal prevail. Because the United States Supreme Court has held that it does not violate double jeopardy for the State to retry a defendant after a mid-trial dismissal of charges on grounds unrelated to factual guilt or innocence, Justice Gray reasoned, citing *United States v. Scott*,[7] Article 44.01(a)(1) should be read to permit the State's appeal here.[8] Finally, Justice Gray complained that the holding of the majority would allow trial courts to insulate their rulings dismissing charging instruments from appellate review by simply delaying those rulings until after jeopardy has attached, "a result most likely not intended by the legislature."[9]

We granted the State's petitions for discretionary review in order to resolve this substantial dispute among the members of the court of appeals and to decide whether the majority may have misconstrued Article 44.01(a)(1), or our prior precedent construing it.[10] The issue presented is: Can the State appeal an order dismissing a charging instrument when that order is granted, not pre-trial, but only *after* the evidence is closed and the case has been submitted to the fact-finder (here, the trial court) for deliberations on the issue of guilt or innocence? We hold that it can.

### ANALYSIS

■ Article 44.01(a)(1) authorizes the State to appeal any order of the trial court

---

1. *State v. Stanley,* 171 S.W.3d 516 (Ct.App.-Waco 2005).

2. Tex.Code Crim. Proc. art. 44.01(a)(1).

3. *State v. Eaves,* 800 S.W.2d 220, at 224 (Tex. Crim.App.1990).

4. *State v. Moreno,* 807 S.W.2d 327, at 334 (Tex.Crim.App.1991).

5. 171 S.W.3d at 517.

6. *Ibid.*

7. 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978).

8. 171 S.W.3d at 517.

9. *Ibid., citing* 43A George E. Dix & Robert O. Dawson, Texas Practice: Criminal Practice and Procedure § 43.198 (2d ed.2001).

10. *See* Tex.R.App. Proc. 66.3(e) & (d), respectively.

that "dismisses an indictment, information, or complaint or any portion of an indictment, information, or complaint[.]" In *Moreno* we concluded that this provision entitles the State to appeal any order, short of an acquittal, which has the effect of terminating the prosecution, regardless of how the trial court characterizes its order. In summing up, we held "that the trial court 'effectively terminates' the prosecution against the accused whenever the effect of its order forces any alteration of the indictment or information *before the trial on the merits* and the State is not willing to comply with that order." [11]

*Moreno* involved a motion to quash an information for lack of sufficient factual particularity, which the trial court granted pre-trial. In summarizing that a pre-trial order to quash on this basis constitutes a termination of the proceedings, so long as the State "is not willing" to supply the missing notice, and is therefore appealable, we were simply limiting our holding to the particular facts before us in that case. We did not necessarily intend thereby to limit the scope of Article 44.01(a)(1) only to orders effectively terminating prosecutions that are actually granted *prior to trial or to the attachment of jeopardy*, as the court of appeals panel believed. On the contrary, we agree with Chief Justice Gray that the plain language of Article 44.01(a)(1) contains no such temporal limitation. On its face it authorizes the State to appeal *any* order that has the effect of terminating the prosecution, without regard to when the order is granted during the course of the proceedings.

We also reject the implicit assumption of the court of appeals majority that, in order to be appealable, an order dismissing must come before the attachment of jeopardy.[12] In *Moreno* we observed that, in enacting Article 44.01, the Texas Legislature intended "to extend to the State appellate powers akin to those that the United States Congress had extended to the federal government in a criminal case." [13] We also observed that, under current federal law, the federal government is empowered to appeal any adverse ruling for which an appeal is not "barred by the Constitution." [14]

▮ Not every order dismissing a prosecution after jeopardy has attached will result in a double jeopardy bar to re-prosecution. In *United States v. Scott*, the trial court waited until all of the evidence had been submitted at trial before granting a motion to dismiss two counts of the indictment, on the basis of prejudicial pre-indictment delay, that had been filed and urged pre-trial. The Supreme Court held that the Government could appeal under these circumstances, concluding that "[n]o interest protected by the Double Jeopardy Clause is invaded when the Government is allowed to appeal and seek reversal of such a midtrial termination of the proceedings in a manner favorable to the defendant[,]" at least so long as the defendant himself sought the termination, and it occurred "without any submission to either judge or jury as to his guilt or innocence[.]" [15] Given these precedents, we agree with Chief

11. 807 S.W.2d at 334 (emphasis supplied).

12. It is clear that jeopardy had attached as of the time of the trial court's eventual ruling on the appellee's motion to dismiss. *State v. Torres*, 805 S.W.2d 418 (Tex.Crim.App.1991).

13. 807 S.W.2d at 329. *See also State v. Morgan*, 160 S.W.3d 1, at 3 (Tex.Crim.App.2004).

14. *Id.*, at 332, *quoting United States v. Wilson*, 420 U.S. 332, 339, 95 S.Ct. 1013, 1019, 43 L.Ed.2d 232, at 237–239 (1975).

15. 437 U.S. at 100, 101, 98 S.Ct. 2187.

Justice Gray that an order dismissing the prosecution need not occur prior to the *attachment* of jeopardy before the State can appeal it under Article 44.01(a)(1).

■ In the instant case, however, the trial judge did not rule on the appellees' motion to dismiss the complaints until after he announced that he would "stand in recess while I consider this." Thus it appears that he may have taken up the question of the constitutional validity of the ordinance at the same time that he was considering the issue of the guilt or innocence of the appellees. Can it be said under these circumstances that the proceedings were terminated "without any submission to either judge or jury as to his guilt or innocence"?[16] And if not, does it make a difference to the jeopardy determination?

■ We think it clear enough that the trial judge's consideration of the guilt or innocence of the appellees was *contingent* upon his first ruling upon the constitutional validity of the ordinance. In essence, having ruled in the appellees' favor on that issue, he never reached the contingent issue of their guilt or innocence. The gravamen of the Supreme Court's holding in *Scott* is that double jeopardy does not bar a retrial, and hence a government appeal, whenever it is the defendant who seeks a dismissal of his prosecution on any legal basis unrelated to his guilt or innocence.[17] The appellees continued to press their claim that the ordinance was unconstitutional right up until the time the trial judge recessed to consider the evidence he had heard. And indeed, the only contested issue at trial, and the sole subject of counsel's final summation to the court, had nothing to do with the guilt or innocence of the appellees, and everything to do with the constitutionality of the ordinance under which they were charged. It should make no difference to the jeopardy analysis that the trial judge had taken the issue of the guilt or innocence of the appellees "under submission," in the sense that, had he denied their motion to dismiss, he would have continued deliberating to decide whether the State had convinced him of their guilt beyond a reasonable doubt. As long as he resolved the motion to dismiss adversely to the State without ultimately addressing the issue of guilt or innocence, there is no double jeopardy impediment to the State's appeal.

■ The appellees insist, however, that the trial court's order actually amounted to an order of acquittal. As we recognized in *Moreno*, an order that terminates a prosecution in an acquittal prior to a jury verdict has definite and inescapable jeopardy consequences, and thus "cannot be reviewed [on appeal] regardless of how egregiously wrong the verdict may be."[18] Thus, if the order that the trial court entered in this cause constituted an acquittal, even if erroneously, then the State may not appeal it. As the appellees point out, the language that the trial court utilized in dismissing the complaints sounds like the language of an acquittal. The trial court did not simply dismiss the complaints. It also purported to "discharge[ ]" the appellees "from further liability." This

16. *Id.*, at 101, 98 S.Ct. 2187.

17. *Id.*, at 96, 98 S.Ct. 2187.

18. 807 S.W.2d 327, at 332, n. 6. *See also Smith v. Massachusetts*, 543 U.S. 462, 125 S.Ct. 1129, at 1134, 160 L.Ed.2d 914 (2005) (if, after judgment of acquittal, further proceedings would be necessary for state to acquire a conviction, double jeopardy prohibits any and all "postacquittal factfinding proceedings."); *State v. Savage*, 933 S.W.2d 497, at 500 (Tex.Crim.App.1996).

language is identical to that of at least one provision of the Code of Criminal Procedure describing the effect of a judgment of acquittal.[19]

■ Nevertheless, we do not construe the trial court's order to be a judgment of acquittal. In determining whether certain orders will interpose a federal jeopardy bar, the Supreme Court has declared that "the trial judge's characterization of his action does not control the classification of the action."[20] Instead, the Supreme Court has prescribed and "consistently used" a definition of "acquittal" that the trial court's order in this case does not satisfy.[21] According to that definition, "a defendant is acquitted only when 'the ruling of the judge, whatever its label, actually represents a resolution [in the defendant's favor], correct or not, of some or all *of the factual elements of the offense charged.*'"[22] This Court has similarly observed, in *Ex parte George,*[23] that while no statutory provision explicitly defines the word "acquittal," "the context in which it appears throughout the Code of Criminal Procedure creates a powerful inference that it means a finding of fact that the accused is not guilty of the criminal offense with which he is charged."

Here, the trial court's order did not purport to resolve any of the factual elements of the offense the appellees were alleged to have committed. It is true that in signing the order that was apparently prepared by the appellees and attached to their motion to dismiss, the trial court endorsed language ("discharged from further liability") that would be appropriate to an order of acquittal. But nowhere does the order recite that the appellees have been found not guilty, that the State's evidence did not meet the standard of proof beyond a reasonable doubt, or that the State's proof as to any specific factual element necessary to conviction was lacking. Nor do we think the trial court would likely have signed such an order when its obvious intention was to grant the motion to dismiss the charges, just as counsel for the appellees urged it to do in his final summation, rather than to rule on the ultimate issue of their guilt or innocence. In our view, the trial court did not erroneously make a finding that the appellees were not guilty of violating the ordinance. He made *no* finding with respect to that issue, and therefore his order cannot stand as a jeopardy bar to the State's ability to appeal from it under Article 44.01(a)(1).

## CONCLUSION

We hold that the court of appeals erred to conclude that the State was not authorized under Article 44.01(a)(1) to appeal the trial court's order in these causes. The judgment of the court of appeals dismissing the State's appeal is reversed. The cause is remanded to that court to address the merits of the State's contentions.

---

19. Tex.Code Crim. Proc. art. 37.12 ("On each verdict of acquittal or conviction, the proper judgment shall be entered immediately. If acquitted, the defendant shall at once be *discharged from all further liability* upon the charge for which he was tried[.]" (emphasis supplied)).

20. *United States v. Scott,* supra, at 96, 98 S.Ct. 2187.

21. *Smith v. Massachusetts,* supra, at 1134.

22. *United States v. Scott,* supra, at 97, 98 S.Ct. 2187 *quoting United States v. Martin Linen Supply Co.,* 430 U.S. 564, at 571, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977); *see also Smith v. Massachusetts,* supra, at 1134.

23. 913 S.W.2d 523, at 527 (Tex.Crim.App. 1995).

WOMACK and JOHNSON, J.J., concur in the result.

COCHRAN, J., dissents.