IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-06-00160-CR

 

Bobby Blake Newton,

                                                                                    Appellant

 v.

 

The State of Texas,

                                                                                    Appellee

 

 

 



From the 272nd District Court

Brazos County, Texas

Trial Court No. 05-00731-CRF-272

 



DISSENTING Opinion

ON PETITION FOR DISCRETIONARY REVIEW



 








        As
of April 30, 2007, the statewide average number of cases pending per
intermediate appellate court justice was 99.2 cases.  Justice Reyna had 148
pending cases as of May 31, 2007, down from 153 cases pending at the end of
April.  This is 43 pending cases more than Justice Vance, the justice on this
Court with the next most pending cases.  The problem is that a majority of this
Court has developed a pattern of processing the same proceeding multiple times,
some by choice and some by having been reversed by a higher court and the
proceeding remanded for further review.  E.g., City of Waco v. Kelley, No. 10-03-00214-CV, 2004 Tex. App. LEXIS 9828 (Tex. App.—Waco Oct. 29, 2004) (mem. op.) (Reyna, J.), rev’d, 197
S.W.3d 324 (Tex. 2006) (per curiam),  on remand, No. 10-03-00214-CV,
2007 Tex. App. LEXIS 3409 (Tex. App.—Waco May 2, 2007, no pet. h.) (Reyna, J.); Pena
v. State, 166 S.W.3d 274 (Tex.
App.—Waco 2005) (Reyna, J.), vacated, 191 S.W.3d 133 (Tex. Crim. App.
2006), on remand, No. 10-03-00109-CR, 2007 Tex. App. LEXIS 3417 (Tex.
App.—Waco May 2, 2007, no pet. h.) (Reyna, J.).

        To
keep up with our work, it is critical that we process each proceeding only one
time.  But we have issued an opinion in this proceeding before.  See Newton v. State, No. 10-06-00160-CR, 2007 Tex. App. LEXIS 2477 (Tex. App.—Waco Mar. 28, 2007, pet. dism’d) (mem. op.).  And the prior memorandum opinion was
unanimous in the decision to affirm the conviction.[1]  If the majority thought that result was wrong,
why did the majority not just rewrite the opinion and judgment rather than
voting to grant a motion to publish that prior memorandum opinion?  See Newton v. State, No. 10-06-00160-CR, slip op. (Tex. App.—Waco May 9, 2007, order).

        Instead the majority waited to prepare its
new opinion until we were put under the thirty-day deadline of Rule 50 after a
petition for discretionary review was filed, a time in which the State does not
have the opportunity to provide additional briefing nor do I have adequate time
to conduct additional research.  See Tex.
R. App. P.  50.  In that new opinion the majority now reverses the
conviction.  The majority must
have something larger at work here than just getting to what the majority
believes is the correct judgment, because there is no issue raised in the
petition for discretionary review that had not already been presented to us.

        But the result of whatever is at work is
sub-standard based upon the history of the review of this Court’s work product
by the higher courts. This is the most reversed court in the State.  Based on the number of this Court’s decisions
which have been reversed, this calendar year does not look good.[2]  And reversals in the last full calendar year made it an extraordinarily bad year.[3]  It is of little solace to me that in most of
these reversals I had dissented to the majority’s opinion and judgment.  And again I must dissent.

        I attach as an appendix the body of this
Court’s memorandum opinion of March 28, 2007, which the majority ordered
published on May 9, 2007, but now withdraws.  I adopt that memorandum opinion
as my dissenting opinion.  Because the majority withdraws our prior opinion
affirming Newton’s conviction, and issues a new opinion and judgment which now
reverse Newton’s conviction for the aggravated sexual assault of a child, I respectfully dissent.

TOM GRAY

Chief
Justice

Dissenting
opinion delivered and filed June 13, 2007

Publish








APPENDIX

 

        Newton appeals his convictions
for aggravated sexual assault of a child, and for indecency with a child by
sexual contact, against the victim named in the indictment as Jane Doe, the
daughter of Newton’s former wife.  See Act of May 28, 1997, 75th Leg.,
R.S., ch. 1286, § 1, 1997 Tex. Gen. Laws 4911, 4911 (amended 1999)
(current version at Tex. Penal Code Ann.
§ 22.021(a) (Vernon Supp. 2006)); Act of May 29, 1993, 73d Leg., R.S., ch.
900, art. 1, § 1.01, sec. 21.11(a), 1993 Tex. Gen. Laws 3586, 3616
(amended 2001) (current version at Tex.
Penal Code Ann. § 21.11(a) (Vernon 2003)).  We affirm.

        Venue.  In Newton’s fourth issue, he contends that the
evidence of indecency with a child was legally insufficient.  Specifically, Newton argues that there was no evidence of venue in Brazos County.

        “Unless . . .
disputed in the trial court, or unless the record affirmatively shows the
contrary, the court of appeals must presume . . . that venue was
proved in the trial court.”  Tex. R.
App. P. 44.2(c); see id. 33.1(a); Henley v. State, 98
S.W.3d 732, 734 (Tex. App.—Waco 2003, pet. ref’d).  In order to dispute proof
of venue, the defendant must raise the issue specifically in the trial court.  See
Tex. R. App. P. 33.1(a); Etchieson
v. State, 574 S.W.2d 753, 759 (Tex. Crim. App. 1978); Bass v. State, 464
S.W.2d 668, 669 (Tex. Crim. App. 1971); Romay v. State, 442 S.W.2d 399,
400 (Tex. Crim. App. 1969); Martin v. State, 385 S.W.2d 260, 261 (Tex.
Crim. App. 1964) (op. on orig. submission); Atwood v. State, 120 S.W.3d
892, 894-95 (Tex. App.—Texarkana 2003, no pet.); Mosley v. State, 643
S.W.2d 212, 216 (Tex. App.—Fort Worth 1982, no pet.); see Henley at
734.  In order for the record to show affirmatively that the State did not
prove venue, “the record [must] affirmatively negate[] whatever proof was made
by the State on the matter of venue.”  Holdridge v. State, 707 S.W.2d
18, 21-22 (Tex. Crim. App. 1986); see Holdridge v. State, 684 S.W.2d
766, 767 (Tex. App.—Waco 1984) (only “affirmative and conclusive proof in the
record that the venue of prosecution was improperly laid” avoids presumption), aff’d,
Holdridge, 707 S.W.2d 18.

        Newton points to evidence that
the abuse began in San Antonio.  The State points to Doe’s testimony that Newton’s “sexual abuse” of Doe began when Doe moved to San Antonio and continued until she
moved to Franklin.  (Br. at 50 (quoting 3 R.R. at 132).)  Doe moved to San Antonio before moving to College Station in Brazos County, and then to Franklin.  The State also points to evidence that Newton “insert[ed] a finger into [Doe’s]
private area” once in Brazos County.  (Id. (quoting 3 R.R. at
170).)  The indictment alleged that Newton committed indecency with a child by
“engag[ing] in sexual contact by touching the genitals of Jane Doe.”[4]  (I C.R. at 1.)

        Newton does not point in the
record to any dispute of venue in the trial court, nor does he attempt to show
that the record affirmatively negates the State’s proof of venue or that the
record affirmatively shows that mandatory venue lay elsewhere than in Brazos
County.  We presume that the State proved venue in the trial court.  We
overrule Newton’s fourth issue.

        Evidence.  In Newton’s first three issues, he
complains concerning the trial court’s overruling of Newton’s objections to
evidence.

        “An appellate court reviews a
trial court’s decision to admit or exclude evidence under an abuse of
discretion standard.”  Shuffield v. State, 189 S.W.3d 782, 793 (Tex.
Crim. App.), cert. denied, 127 S. Ct. 664 (2006); accord Rachal
v. State, 917 S.W.2d 799, 816 (Tex. Crim. App. 1996); Montgomery v.
State, 810 S.W.2d 372, 387-88 (Tex. Crim. App. 1991) (op. on reh’g).  “If
the trial court’s decision was within the bounds of reasonable disagreement,
the appellate court should not disturb its ruling.”  Shuffield at 793
(citing Rachal at 816); accord Montgomery at 390-92 (op. on
reh’g).

        Hearsay.  In Newton’s first issue, he contends that
the trial court erred in overruling Newton’s hearsay objection to outcry
evidence.  See Tex. Code Crim.
Proc. Ann. art. 38.072 (Vernon 2005); Tex.
R. Evid. 801(d), 802.  Texas Code of Criminal Procedure Article 38.072
“makes an ‘outcry’ exception to the hearsay rule for the first report of sexual
abuse that [a] child” victim “makes to an adult.”  In re Z.L.B., 102
S.W.3d 120, 121 (Tex. 2003) (juvenile adjudication); accord Thomas v. State,
1 S.W.3d 138, 140 (Tex. App.—Texarkana 1999, pet. ref’d); see Holland v. State, 802 S.W.2d 696, 699 (Tex. Crim. App. 1991).  “When offered for the
truth of the matters asserted, so called ‘outcry testimony’ is hearsay; as
such, it is objectionable unless the testimony is permitted by a prescribed
exception to the hearsay rule.”  Dorado v. State, 843 S.W.2d 37, 38
(Tex. Crim. App. 1992); see Martinez v. State, 178 S.W.3d 806, 810-811
(Tex. Crim. App. 2005).

        In prosecutions for certain
offenses, however, including prosecutions for sexual offenses under Texas Penal
Code Chapter 21 committed against child victims twelve years of age or younger,
subject to procedural requirements, the victim’s outcry “statements that
describe the alleged offense” are “not inadmissible because of the hearsay
rule” if the statements “were made to the first person, 18 years of age or
older, other than the defendant, to whom the child made a statement about the
offense.”  Tex. Code Crim. Proc. Ann.
art. 38.072, § 2(a), (b), § 2(a)(2); see id. § 1. 
Article 38.072 “strik[es] a balance between the general prohibition against
hearsay and the specific societal desire to curb the sexual abuse of
children.”  Garcia v. State, 792 S.W.2d 88, 91 (Tex. Crim. App. 1990)
(citing Osborne v. Ohio, 495 U.S. 103 (1990)).  The statute’s
purpose is to “admit the testimony of the first adult a child confides in
regarding the abuse.”  Martinez, 178 S.W.3d at 811.  Otherwise,
“the people whom these children trust and in whom they have confided
. . . are barred from repeating what they have been told
. . . .”  Id. n.15 (quoting House Comm. on Crim. Jurisprudence, Bill Analysis, Tex. H.B.
579, 69th Leg., R.S. (1985)).    

        “But the societal interest in
curbing child abuse would hardly be served if all that ‘first person’ had to
testify to was a general allegation from the child that something in the area
of child abuse was going on at the home.”  Garcia, 792 S.W.2d at 91.  In
the context, then, of determining which witness, as the “first person
. . . to whom the child made a statement about the offense” committed
by the defendant was the proper outcry witness, Article 38.072 “demands more
than a general allusion of sexual abuse”; that is, the statutory language
“statement about the offense” does not “mean[] that any statement that arguably
relates to what later evolves into an allegation of child abuse against a
particular person will satisfy the requirements of” the statute.  Id. (citing Tex. Code Crim. Proc. Ann.
art. 38.072, § 2(a)(2)) (complainant testified that she told her teacher
“what happened”); see Villanueva v. State, 209 S.W.3d 239, 247 (Tex.
App.—Waco 2006, no pet.); Hanson v. State, 180 S.W.3d 726, 727 (Tex.
App.—Waco 2005, no pet.).  A “statement about the offense” means “a statement
that in some discernible manner describes the alleged offense.”  Garcia at
91 (interpreting Tex. Code Crim. Proc.
Ann. art. 38.072, § 2(a)(2)).

        “We review the trial court’s
decision to admit or exclude a hearsay statement that may fall within the
article 38.072 hearsay exception under an abuse of discretion standard.”  Klein
v. State, 191 S.W.3d 766, 779 (Tex. App.—Fort Worth 2006, pet. granted on
other grounds); accord Villanueva, 209 S.W.3d at 247; see Garcia, 792
S.W.2d at 91.

        The outcry witness, a
psychotherapist who treated Doe, testified outside the presence of the jury
that her notes for a date certain stated that Doe disclosed “that [Newton] had sexually abused [Doe] in the past.”  (3 R.R. at 6, 7; see id. at 5-7.) 


        Newton argues that the
witness’s “testimony was a general conclusion of abuse that did not describe
the act in a discernible manner.”  (Br. at 5); see Garcia, 792 S.W.2d at
91.  Newton conceded that the witness was the first adult to whom Doe made a
statement concerning Newton’s offenses.  Although the witness’s testimony
concerning Doe’s statement to her did not specify the manner or means of Newton’s offenses, Doe’s statement did clearly allege sexual abuse and clearly identified Newton as the abuser.  The trial court did not abuse its discretion in finding that the
witness’s testimony was admissible under Article 38.072.[5]  The trial court did not err in overruling Newton’s hearsay objection.[6]  We overrule Newton’s first issue.

        Extraneous Offenses.  In Newton’s second and
third issues, he contends that the trial court erred in overruling Newton’s objections to evidence of extraneous offenses.

        “A trial court’s ruling on the
admissibility of extraneous offenses is reviewed under an abuse of discretion
standard.”  Prible v. State, 175 S.W.3d 724, 731 (Tex. Crim. App.), cert.
denied, 126 S. Ct. 481 (2005); accord Montgomery, 810 S.W.2d at
391-93 (op. on reh’g).

        Newton complains of testimony
of his stepdaughter L. D.:  “L.D. testified before the jury that Appellant
sexually abused her when she was nine or ten when they lived in Houston.  (4 RR at 99-100).  Appellant made L.D. perform oral sex on him and then forced
her to rub on his scrotum while he had sexual intercourse with an unknown
individual.  (4 RR at 100).”  (Br. at 17.)

        Rule 404.  In
 Newton’s second issue, he argues under Texas Rule of Evidence 404(b).  See
Tex. R. Evid. 404(b).  Under
that rule, “Evidence of other crimes, wrongs or acts is not admissible to prove
the character of a person in order to show action in conformity therewith.  It
may, however, be admissible for other purposes, such as proof of motive,
opportunity, intent, preparation, plan, knowledge, identity, or absence of
mistake or accident . . . .”  Id.  “Rule
404(b) allows evidence of other crimes, wrongs, or acts if the evidence has
relevance apart from character conformity.”  Moses v. State, 105 S.W.3d
622, 626 (Tex. Crim. App. 2003); accord Montgomery, 810 S.W.2d at 387
(op. on reh’g); see Tex. R. Evid.
401-402; Martin v. State, 173 S.W.3d 463, 466 (Tex. Crim. App. 2005). 
“‘Relevant evidence’ means evidence having any tendency to make the existence
of any fact that is of consequence to the determination of the action more
probable or less probable than it would be without the evidence.”  Tex. R. Evid. 401.  To be probative,
extraneous-offense evidence need only provide a “‘small nudge’ towards
contradicting [an] appellant’s defensive theories and towards proving that
. . . molestation did occur.”  Wheeler v. State, 67 S.W.3d
879, 889 (Tex. Crim. App. 2002) (internal footnote omitted) (quoting Montgomery, 810 S.W.2d at 381 (1990) (op. on orig. submission)).

        “A trial court’s Rule 404(b)
ruling is reviewed under an abuse of discretion standard.”  Page v. State, 137
S.W.3d 75, 78 (Tex. Crim. App. 2004) (citing Lane v. State, 933 S.W.2d
504, 519 (Tex. Crim. App. 1996)); accord Montgomery, 810 S.W.2d at
390-91 (op. on reh’g); see Qualley v. State, 206 S.W.3d 624, 638 (Tex.
Crim. App. 2006) (per curiam).   “Whether extraneous offense evidence has
relevance apart from character conformity, as required by Rule 404(b), is a
question for the trial court” in its discretion.  Martin, 173 S.W.3d at
466 (quoting Moses, 105 S.W.3d at 627); accord Montgomery at 391
(op. on reh’g).

        Defensive Issue.  First,
 Newton argues that the extraneous-offense evidence was not admissible to
rebut a defensive issue, as the State argued at trial that it was.  

        “Rebuttal of a defensive theory . . . is
. . . one of the permissible purposes for which relevant evidence may
be admitted under Rule 404(b).”  Moses, 105 S.W.3d at 626 (citing Crank
v. State, 761 S.W.2d 328, 341 (Tex. Crim. App. 1988), disavowed on other
grounds, Alford v. State, 866 S.W.2d 619, 624 (Tex. Crim. App. 1993)); see
Johnston v. State, 145 S.W.3d 215, 222 (Tex. Crim. App. 2004); Albrecht
v. State, 486 S.W.2d 97, 101 (Tex. Crim. App. 1972) (common law); Wingfield
v. State, 197 S.W.3d 922, 925 (Tex. App.—Dallas 2006, no pet.); e.g.,
Wheeler, 67 S.W.3d at 886-87 (fabrication).

        A defensive issue can be
raised for purposes of Rule 404 otherwise than by evidence admitted by the
defense.  “[E]xtraneous offenses are admissible to rebut defensive theories
raised by the testimony of a State’s witness during cross-examination.”  Ransom
v. State, 920 S.W.2d 288, 301 (Tex. Crim. App. 1994); accord Crank, 761
S.W.2d at 341; see Powell v. State, 63 S.W.3d 435, 437-39 (Tex. Crim.
App. 2001); Walker v. State, 201 S.W.3d 841, 852 (Tex. App.—Waco 2006,
pet. ref’d).  “The mere fact that the state’s witness was crossexamined will
not, in and of itself, authorize the state to introduce evidence of extraneous
offenses.  Rather, it is the responses elicited from a state’s witness on
crossexamination which may allow the state to subsequently introduce extraneous
offense evidence.”  Crank at 341 (citing Albrecht, 486 S.W.2d at
101-102); accord DeLeon v. State, 77 S.W.3d 300, 314 (Tex. App.—Austin
2001, pet. ref’d).  The defense may also raise a defensive theory in its
examination of the venire panel.  See Person v. State, No.
B14-91-00503-CR, 1993 Tex. App. LEXIS 1050, at *15 (Tex. App.—Houston [14th
Dist.] Apr. 8, 1993, no pet.) (not designated for publication).  

        The State argues that Newton raised the defensive issue that Doe fabricated her allegations, either out of her
own ill will toward him or at her mother’s prompting, in his examination of the
venire panel, in cross-examination of the State’s witnesses, and in argument.[7]  The State points, and pointed in the trial court, to Newton’s cross-examination of Doe.[8]  Much of that concerns general impeachment of Doe
by prior inconsistent statements; some of the cross-examination, however, does
tend to raise the issue of fabrication.  For example, Newton brought out that
Doe hated and had no respect for Newton, disliked that he was “bossy,” resented
that he came between her and her mother, felt better when she moved away from
him, and first alleged that he abused her after she learned that her mother
might reconcile with him.  (State Br. at 38 (citing 3 R.R. at 173).)

        The State also points to Newton’s voir-dire examination, in which he asked:

Do you think that someone is—when I
say a ‘child’ in their teens—do you think someone in their teens is able to
make up a story that’s not true?  Does everybody agree with that?

       Do you think that—we talked
about—[the State] talked about the reason why people don’t make outcries is
because they’re scared to say something about it.  I forgot who said something,
but they basically said that a child can be manipulated not to tell what has
happened by an adult.

       The adult has
told them either by force or, you know, ‘This will happen to you if you say
this.’  But do you think the converse of that, do you think that basically an
adult can manipulate a child to say something?  When I say ‘child’—again,
teenagers.  Does everybody agree with that?

[sic] (2 R.R. at 103 (bracketed
alteration added).)[9]    

        The trial court was in a
position to observe Newton’s voir-dire examination and cross-examination, and
the responses of the panelists and witnesses, and the effect of those
examinations and responses on the jurors.  The trial court did not abuse its
discretion in finding that Newton raised the issue of Doe’s fabricating her
testimony.   

        Similarity.  Next, Newton argues that the extraneous offenses were not sufficiently similar to the offenses
of which he was convicted.  

        “To be probative, the
extraneous offense evidence admitted to rebut a defensive theory must be
similar to the charged offense.”  Blackwell v. State, 193 S.W.3d 1, 13
(Tex. App.—Houston [1st Dist.] 2006, pet. ref’d); see Wheeler, 67 S.W.3d
at 888.  

        Newton argues that “this Court should hold that the State must prove the extraneous
offense is similar enough to the charged offense to ‘earmark [it] as the
handiwork of the accused’ . . . .”  (Br. at 30 (quoting Owens
v. State, 827 S.W.2d 911, 914-15 (Tex. Crim. App. 1992)) (bracketed
alteration by Newton).)  Owens is distinguishable.  Owens concerned
evidence of “system,” that is, “‘modus operandi’ or ‘methodology,’” or “a
defendant’s distinctive and idiosyncratic manner of committing criminal acts,”
to prove the defendant’s identity.  Owens, 827 S.W.2d at 915; see id.
at 916.  Under Rule 404(b), “[w]hen the State seeks to admit extraneous offense
evidence under a theory of ‘system’ or modus operandi, ‘there must be a showing
that the extraneous offense which was committed by the defendant was “so nearly
identical in method [to the charged offense] as to earmark them as the
handiwork of the accused.”’”  Id. at 915 (quoting Collazo v.
State, 623 S.W.2d 647, 648 (Tex. Crim. App. 1981) (quoting E. Cleary, McCormick’s Handbook of the Law of
Evidence 449 (2d ed. 1972))); see Moore v. State, 700 S.W.2d 193,
201 (Tex. Crim. App. 1985); Dickey v. State, 646 S.W.2d 232, 235 (Tex.
Crim. App. 1983).  To prove system, “the prior bad act ‘must be so
distinctively similar’ to the present offense ‘as to constitute a “signature”
act.’”  Qualley, 206 S.W.3d at 638 (quoting Johnston, 145
S.W.3d at 221 n.16 (internal footnote omitted)); see Bishop v. State, 869
S.W.2d 342, 346 (Tex. Crim. App. 1993).  

        But whether extraneous
offenses are sufficiently similar to charged offenses to be admissible is a
matter of degree.   For example, “the degree of similarity required is not so
great where intent is the material issue” that the extraneous offenses rebut
“as when identity is the material issue, and extraneous offenses are offered to
prove modus operandi.”  Cantrell v. State, 731 S.W.2d 84, 90 (Tex. Crim.
App. 1987); cf. Owens, 827 S.W.2d at 914-15.  The degree of similarity
required to rebut a defensive issue, likewise, is not great.  See Blackwell,
193 S.W.3d at 13; Dennis v. State, 178 S.W.3d 172, 178-79
(Tex. App.—Houston [1st Dist.] 2005, pet. ref’d).  For example, in Mendiola
v. Texas, the trial court admitted extraneous offenses in part to rebut
Mendiola’s defense that Mendiola was impotent and thus incapable of committing
the charged offense.  Mendiola v. State, 995 S.W.2d 175, 178-81 (Tex.
App.—San Antonio 1999), rev’d on other grounds, 21 S.W.3d 282 (Tex.
Crim. App. 2000).  There, in order to rebut that defense, the extraneous
offenses need only tend to prove that Mendiola was not impotent.  The probative
value of the extraneous offenses did not flow from their close factual
similarity to the charged offense, but only from their force to prove that the
defendant was not impotent.  Likewise, the probative value of Newton’s extraneous
offenses to rebut circumstantially Newton’s fabrication issue does not flow
from a close similarity to the charged offenses.

        The State pointed primarily to
the evidence that Newton sexually assaulted both stepdaughters when they were
about the same age and that the abuse continued as long as Newton was in the
home.  If the jury believed that Newton committed those extraneous offenses,
that would make it more probable that Doe was not fabricating her allegations
against Newton.  The trial court did not abuse its discretion in finding that
the extraneous offenses were not so dissimilar from the charged offenses as to
be without probative value.  

        Remoteness.  Lastly, Newton argues that the extraneous offenses were “too remote to have any probative value.” 
(Br. at 34.)  

        However, “Rule 404 imposes no
time limitations . . . .”  Hernandez v. State, 203 S.W.3d
477, 480 (Tex. App.—Waco 2006, no pet.).  Rather, the Rules of Evidence “favor
the admission of all logically relevant evidence for the jury’s consideration.” 
 Montgomery, 810 S.W.2d at 376 (op. on orig. submission); accord
Hernandez at 480; Prince v. State, 192 S.W.3d 49, 55 (Tex. App.—Houston [14th Dist.] 2006, pet. ref’d).

        The cases cited by Newton are distinguishable.  With the exception of one case, all of the cases cited by Newton were decided under the common law of evidence that existed prior to the adoption of
the Rules of Evidence, which common law “tended to favor the exclusion of
evidence.”  Montgomery, 810 S.W.2d at 375 (op. on orig. submission);
see Prince, 192 S.W.3d at 55; e.g. Messenger v. State, 638 S.W.2d
883 (Tex. Crim. App. [Panel Op.] 1982).  The other case, assuming that it was
correctly decided, concerned extraneous-offense evidence admitted to prove
system, which, for the reasons stated above, requires a high degree of
similarity; and was decided under Rule of Evidence 403, not Rule 404.  See
Reyes v. State, 69 S.W.3d 725, 740 (Tex. App.—Corpus Christi 2002, pet.
ref’d).

        The trial court did not abuse
its discretion in finding that the remoteness of the extraneous offenses did
not render them without probative value.

        The trial court did not abuse
its discretion in overruling Newton’s objection under Rule 404.[10]  We overrule Newton’s second issue.

        Rule 403.  In
 Newton’s third issue, he argues under Rule of Evidence 403.[11]  See Tex. R. Evid.
403.  Under that rule, “Although relevant, evidence may be excluded if its
probative value is substantially outweighed by the danger of unfair prejudice,
confusion of the issues, or misleading the jury, or by considerations of undue
delay, or needless presentation of cumulative evidence.”  Id.  We
understand Newton to argue unfair prejudice.  “‘[U]nfair prejudice’ refers to
‘an undue tendency to suggest decision on an improper basis, commonly, though
not necessarily, an emotional one.’”  Erazo v. State, 144 S.W.3d 487,
501-502 (Tex. Crim. App. 2004) (quoting Rogers v. State, 991 S.W.2d 263,
266 (Tex. Crim. App. 1999)); accord Cohn v. State, 849 S.W.2d
817, 820 (Tex. Crim. App. 1993).

        “[A] trial court is entitled
to broad discretion in ruling on a Rule 403 objection.”  State v. Mechler, 153
S.W.3d 435, 439 (Tex. Crim. App.  2005) (citing Manning v. State, 114
S.W.3d 922, 926 (Tex. Crim. App. 2003)); accord Powell v. State, 189
S.W.3d 285, 288 (Tex. Crim. App. 2006); Martin, 173 S.W.3d at 467; Montgomery,
810 S.W.2d at 391-93 (op. on reh’g).  “. . . Rule 403’s ‘use of
the word “may” reflects the draftsman’s intent “that the trial judge be given a
very substantial discretion in ‘balancing’ probative value on the one hand and
‘unfair prejudice’ on the other, and that he should not be reversed simply
because an appellate court believes that it would have decided the matter
otherwise.”’”  Powell, 189 S.W.3d at 288 (quoting Manning
at 926).

       [A] Rule 403 analysis should include, but
is not limited to, the following factors:

       (1)   how probative the evidence is;

       (2)   the potential of the evidence to
impress the jury in some irrational, but nevertheless indelible way;

       (3)   the time the proponent needs to develop
the evidence; and

       (4)   the proponent’s need for the
evidence.

Shuffield, 189 S.W.3d at 787 (quoting Montgomery, 810
S.W.2d at 389-90 (op. on reh’g)) (alteration added); see Powell, 189
S.W.3d at 287.

        As to the second factor,
“[b]oth sexually related misconduct and misconduct involving children are
inherently inflammatory.”  Montgomery, 810 S.W.2d at 397 (op. on
reh’g); accord Bishop, 869 S.W.2d at 346; Whitmire v. State, 183
S.W.3d 522, 529 (Tex. App.—Houston [14th Dist.] 2006, no pet.); Rickerson v.
State, 138 S.W.3d 528, 532 (Tex. App.—Houston [14th Dist.] 2004, pet
ref’d).  In evaluating the prejudicial effect of evidence, we take into account
whether the trial court gave an instruction limiting the jury’s consideration
of the evidence to its proper purpose.  Blackwell, 193 S.W.3d at 16-17; Dennis,
178 S.W.3d at 181.  We also consider whether the parties argued that the
jury could only consider the evidence for its proper purpose.  Blackwell at
17.

        As to the third factor, “[t]he
potential for unfair prejudice occurs if the State spends an undue amount of
time presenting the extraneous offense to the jury.”  Dennis, 178 S.W.3d
at 181 n.2.  

        As to the fourth factor,
“[t]here are three questions that the reviewing court should
answer . . . : ‘[1] Does the proponent have other
available evidence to establish the fact of consequence that the [evidence] is
relevant to show?  [2] If so, how strong is that other evidence?  And
[3] is the fact of consequence related to an issue that is in dispute?’”  Erazo,
144 S.W.3d at 496 (quoting Montgomery, 810 S.W.2d at
390 (op. on reh’g)) (bracketed numerals added); accord Reese v. State, 33
S.W.3d 238, 242 (Tex. Crim. App. 2000).

        As to the extraneous-offense
evidence’s probative value, for the reasons stated above, although the evidence
did not tend to disprove fabrication directly, it tended circumstantially to
prove that Doe did not fabricate her allegations.  As to the evidence’s
prejudicial effect, the trial court carefully instructed the jury on the
circumstances under which and the purpose for which the jury could consider the
evidence, in limiting instructions both immediately after the witness
testified, and in the trial court’s charge.  Moreover, both parties argued to
the jury that it could not consider the evidence apart from those circumstances
and for that purpose.  As to the time that the State needed to develop the
evidence, Newton argues that it was extensive.  Newton points to bench
conferences on the admissibility of the evidence, to L. D.’s testimony generally,
to the testimony of a witness apparently called to bolster L. D.’s
credibility, to Newton’s general cross-examination of L. D., and to
Newton’s direct examination of one of his witnesses.  We do not attribute such
matters to the State, as proponent of the evidence, in developing the
extraneous-offense evidence.  The State’s presentation of the testimony of
which Newton complains was brief.  As to the State’s need for the
extraneous-offense evidence, Newton does not point to direct evidence tending
to disprove Newton’s fabrication issue, and the State points to the lack of
evidence corroborating Doe’s testimony.

        On those factors, the trial
court did not abuse its discretion in finding that the prejudicial effect of
the extraneous-offense evidence did not substantially outweigh the evidence’s
probative value.  The trial court did not err in overruling Newton’s Rule 403
objection.[12]  We overrule Newton’s third issue.

ouHoust

        CONCLUSION. 
Having overruled Newton’s issues, we affirm.

 









          [1] Justice
Vance would have addressed one particular argument raised by Newton that was
not specifically discussed in the prior memorandum opinion.





          [2] See,
e.g., Sonnichsen v. Baylor Univ., No. 10-02-00125-CV, 2004 Tex. App. LEXIS
7774 (Tex. App.—Waco Aug. 25, 2004) (mem. op.) (Reyna, J.), rev'd &
judgm't rendered, 50 Tex. Sup. Ct. J. 618, 2007 Tex. LEXIS 319 (Tex. Apr. 20, 2007) (per curiam); Coley v. Baylor Univ., 147 S.W.3d 567 (Tex. App.—Waco
2004) (Reyna, J.), rev'd & judgm't rendered, 50 Tex. Sup. Ct. J.
621, 2007 Tex. LEXIS 322 (Tex. Apr. 20, 2007); In re Guardianship of Keller,
171 S.W.3d 498 (Tex. App.—Waco 2005) (Reyna, J.), rev'd sub nom. Zipp v.
Wuemling, 218 S.W.3d 71 (Tex. 2007) (per curiam); State Farm Life Ins.
Co. v. Martinez, 174 S.W.3d 772 (Tex. App.—Waco 2005) (Vance, J.), rev'd,
216 S.W.3d 799 (Tex. 2007); Wachovia Bank of Del., N.A. v. Gilliam, No.
10-04-00038-CV, 2005 Tex. App. LEXIS 5039 (Tex. App.—Waco June 29, 2005
(mem. op.) (Reyna, J.), rev'd & judgm't vacated, 215 S.W.3d 848 (Tex. 2007) (per curiam); Archie v. State, 181 S.W.3d 428 (Tex. App.—Waco 2005)
(Reyna, J.), rev’d, No. PD-0051-06, 2007 Tex. Crim. App. LEXIS 606 (Tex. Crim. App. May 2, 2007); Hooper v. State, 170 S.W.3d 736 (Tex. App.—Waco
2005) (Vance, J.), remanded, 214 S.W.3d 9 (Tex. Crim. App. 2007); Griggs
v. State, 167 S.W.3d 74 (Tex. App.—Waco 2005) (Vance, J.), rev'd,
213 S.W.3d 923 (Tex. Crim. App. 2007).





          [3] See,
in criminal cases, e.g., Westerman v. State, No. 10-04-00292-CR,
2005 Tex. App. LEXIS 4842 (Tex. App.—Waco June 22, 2005) (not designated for
publication) (mem. op.) (Reyna, J.), rev’d, No. PD-1314-05, 2006 WL
2694388 (Tex. Crim. App. Sept. 20, 2006) (not designated for publication); Meza
v. State, No. 10-05-00037-CR, 2005 Tex. App. LEXIS 5566 (Tex. App.—Waco July 13, 2005) (mem. op.) (not designated for publication) (Gray, C.J.), remanded,
206 S.W.3d 684 (Tex. Crim. App. 2006) (sua-sponte discretionary review); Kniatt
v. State, 157 S.W.3d 83 (Tex. App.—Waco 2005) (Vance, J.), rev’d, 206
S.W.3d 657 (Tex. Crim. App. 2006), cert. denied, 127 S. Ct. 667
(2006); Olivas v. State, 153 S.W.3d 108 (Tex. App.—Waco 2004) (Vance,
J.) (3 cases), rev’d, 202 S.W.3d 137 (Tex. Crim. App. 2006); Olivas
v. State, No. 10-02-00311-CR, 2004 Tex. App. LEXIS 10131 (Tex. App.—Waco Nov. 10, 2004) (not designated for publication) (mem. op.) (Gray, C.J.), rev’d, 203
S.W.3d 341 (Tex. Crim. App. 2006); Watson v. State, 160 S.W.3d 627 (Tex.
App.—Waco 2005) (Reyna, J.), rev’d, 204 S.W.3d 404 (Tex. Crim. App.
2006); Herring v. State, 160 S.W.3d 618 (Tex. App.—Waco 2005) (mem. op.)
(Reyna, J.), rev’d, 202 S.W.3d 764 (Tex. Crim. App. 2006), cert.
denied, 127 S. Ct. 2107 (2007); State v. Stanley, 171 S.W.3d
516 (Tex. App.—Waco 2005) (per curiam), rev’d, 201 S.W.3d 754 (Tex.
Crim. App. 2006); State v. Adams, No. 10-05-00102-CR, 2005 Tex. App.
LEXIS 5971 (Tex. App.—Waco July 27, 2005) (not designated for publication)
(mem. op.) (per curiam), rev’d, Stanley, 201 S.W.3d 754; State v.
Rodriguez, No. 10-05-00103-CR, 2005 Tex. App. LEXIS 5914 (Tex. App.—Waco
July 27, 2005) (not designated for publication) (mem. op.) (per curiam), rev’d,
Stanley, 201 S.W.3d 754; State v. Wachsmann, No. 10-05-00104-CR,
2005 Tex. App. LEXIS 5915 (Tex. App.—Waco July 27, 2005) (not designated for
publication) (mem. op.) (per curiam), rev’d, Stanley, 201 S.W.3d 754; State
v. Juntunen, No. 10-05-00105-CR, 2005 Tex. App. LEXIS 5940 (Tex. App.—Waco
July 27, 2005) (not designated for publication) (mem. op.) (per curiam), rev’d,
Stanley, 201 S.W.3d 754; State v. Carpenter, No. 10-05-00106-CR,
2005 Tex. App. LEXIS 5936 (Tex. App.—Waco July 27, 2005) (not designated for
publication) (mem. op.) (per curiam), rev’d, Stanley, 201 S.W.3d 754; State
v. Rodgers, No. 10-05-00107-CR, 2005 Tex. App. LEXIS 5913 (Tex. App.—Waco
July 27, 2005) (not designated for publication) (mem. op.) (per curiam), rev’d,
Stanley, 201 S.W.3d 754; State v. Boutin, No. 10-05-00108-CR, 2005
Tex. App. LEXIS 5920 (Tex. App.—Waco July 27, 2005) (not designated for
publication) (mem. op.) (per curiam), rev’d, Stanley, 201 S.W.3d 754; State
v. Holmes, No. 10-05-00109-CR, 2005 Tex. App. LEXIS 5928 (Tex. App.—Waco
July 27, 2005) (not designated for publication) (mem. op.) (per curiam), rev’d,
Stanley, 201 S.W.3d 754; State v. Garcia, No. 10-05-00110-CR, 2005
Tex. App. LEXIS 5919 (Tex. App.—Waco July 27, 2005) (not designated for
publication) (mem. op.) (per curiam), rev’d, Stanley, 201 S.W.3d 754; State
v. Telles, No. 10-05-00111-CR, 2005 Tex. App. LEXIS 5939 (Tex. App.—Waco
July 27, 2005) (not designated for publication) (mem. op.) (per curiam), rev’d,
Stanley, 201 S.W.3d 754; State v. Leftwich, No. 10-05-00112-CR, 2005
Tex. App. LEXIS 5946 (Tex. App.—Waco July 27, 2005) (not designated for
publication) (mem. op.) (per curiam), rev’d, Stanley, 201 S.W.3d 754; State
v. Collier, No. 10-05-00113-CR, 2005 Tex. App. LEXIS 5917 (Tex. App.—Waco
July 27, 2005) (not designated for publication) (mem. op.) (per curiam), rev’d,
Stanley, 201 S.W.3d 754; State v. Dobbs, No. 10-05-00114-CR, 2005
Tex. App. LEXIS 5938 (Tex. App.—Waco July 27, 2005) (not designated for
publication) (mem. op.) (per curiam), rev’d, Stanley, 201 S.W.3d 754; State
v. Bagby, No. 10-05-00115-CR, 2005 Tex. App. LEXIS 5918 (Tex. App.—Waco
July 27, 2005) (not designated for publication) (mem. op.) (per curiam), rev’d,
Stanley, 201 S.W.3d 754; State v. Unger, No. 10-05-00116-CR, 2005
Tex. App. LEXIS 5942 (Tex. App.—Waco July 27, 2005) (not designated for
publication) (mem. op.) (per curiam), rev’d, Stanley, 201 S.W.3d 754; State
v. Eby, No. 10-05-00117-CR, 2005 Tex. App. LEXIS 5916 (Tex. App.—Waco July
27, 2005) (not designated for publication) (mem. op.) (per curiam), rev’d,
Stanley, 201 S.W.3d 754; Cocke v. State, 170 S.W.3d 747 (Tex.
App.—Waco 2005) (Reyna, J.), rev’d, 201 S.W.3d 744 (Tex. Crim. App.
2006), cert. denied, 127 S. Ct. 1832 (2007); Montanez v. State, 143
S.W.3d 344 (Tex. App.—Waco 2004) (Vance, J.), rev’d, 195 S.W.3d 101
(Tex. Crim. App. 2006); Pena, 166 S.W.3d 274, vacated, 191 S.W.3d
133; Powell v. State, 151 S.W.3d 646 (Tex. App.—Waco 2004) (Reyna, J.), rev’d,
189 S.W.3d 285 (Tex. Crim. App. 2006); Robertson v. State, No.
10-03-00265-CR, 2004 Tex. App. LEXIS 10130 (Tex. App.—Waco Nov. 10, 2004) (not
designated for publication) (mem. op.) (Vance, J.), rev’d, 187 S.W.3d
475 (Tex. Crim. App. 2006).  See also, in the Texas Supreme Court, e.g.,
Norris v. State Farm Mut. Auto. Ins. Co., 217 S.W.3d 1 (Tex. App.—Waco
2004) (mem. op.) (Vance, J.), rev’d, 50 Tex. Sup. Ct. J. 269, 2006 Tex. LEXIS 1298 (Tex. Dec. 22, 2006); Texas Dep't of Pub. Safety v. Alford, 154
S.W.3d 133 (Tex. App.—Waco 2004) (Vance, J.), rev’d, 209 S.W.3d 101
(Tex. 2006) (per curiam); Kelley, 2004 Tex. App. LEXIS 9828, rev’d, 197 S.W.3d 324; Univ. of Tex. Med. Branch v. Estate of Blackmon, 169 S.W.3d 712 (Tex. App.—Waco
2005) (Vance, J.), vacated, 195
S.W.3d 98 (Tex. 2006) (per curiam); Scott v. Citizen’s Nat’l Bank, No.
10-03-00322-CV, 2005 Tex. App. LEXIS 2587 (Tex. App.—Waco Mar. 30, 2005)
(Vance, J.), rev’d sub nom. Citizens
Nat'l Bank v. Scott, 195 S.W.3d 94 (Tex. 2006) (per curiam); Langley
v. Jernigan, No. 10-00-00373-CV, 2005 Tex. App. LEXIS 1687 (Tex. App.—Waco
Mar. 2, 2005) (mem. op.) (Vance, J.), rev’d,
195 S.W.3d 91 (Tex. 2006) (per curiam); Kiefer v. Touris, No. 10-03-00331-CV, 2005 Tex. App. LEXIS 5079 (Tex. App.—Waco June 29, 2005) (mem. op.) (Vance, J.), rev’d,
197 S.W.3d 300 (Tex. 2006) (per curiam); Elwood v. Kroger Co., No. 10-02-00349-CV, 2004 Tex.
App. LEXIS 10119 (Tex. App.—Waco Nov. 10, 2004) (mem. op.) (Vance, J.), rev’d, 197 S.W.3d 793 (Tex. 2006) (per curiam); Lingafelter v. Shupe, 154 S.W.3d 233 (Tex. App.—Waco 2005)
(Vance, J.), rev’d, 192 S.W.3d 577 (Tex. 2006) (per curiam).





        [4] The indictment alleged that Newton committed aggravated sexual assault by “caus[ing] the penetration of the female
sexual organ of Jane Doe . . . by inserting his finger.”  (I C.R. at
1.)  Newton does not contend that indecency with a child constitutes a lesser
included offense of aggravated sexual assault of a child under those facts.  Cf.
Ochoa v. State, 982 S.W.2d 904, 908 (Tex. Crim. App. 1998); Murray v.
State, 24 S.W.3d 881, 889 (Tex. App.—Waco 2000, pet. ref’d).





        [5] We would, moreover, affirm on another
ground.  “[W]e will uphold a trial court’s ruling on any theory of law
applicable to the case . . . .”  State v. Ross, 32 S.W.3d
853, 854 (Tex. Crim. App. 2000); accord Martin v. State, 173 S.W.3d 463,
467 (Tex. Crim. App. 2005); Holden v. State, 205 S.W.3d 587, 589 (Tex.
App.—Waco 2006, no pet.); see Hailey v. State, 87 S.W.3d 118, 121-22
(Tex. Crim. App. 2002).  The testimony would be admissible under the hearsay
exception for statements for purposes of medical diagnosis or treatment.  See
Tex. R. Evid. 803(4); Molina
v. State, 971 S.W.2d 676, 683-84 (Tex. App.—Houston [14th Dist.] 1998, pet.
ref’d); Gohring v. State, 967 S.W.2d 459, 461-63 (Tex. App.—Beaumont 1998,
no pet.); Macias v. State, 776 S.W.2d 255, 258-59 (Tex. App.—San Antonio
1989, pet. ref’d); In re M.M.L., No. 07-05-0240-CV, 2006 Tex. App. LEXIS
6783, at *9-*10 (Tex. App.—Amarillo July 31, 2006, pet. filed) (juvenile
adjudication); Syndex Corp. v. Dean, 820 S.W.2d 869, 873-74 (Tex.
App.—Austin 1991, writ denied).  





          [6] Further,
were we to hold that the trial court erred, we would, after examining the
record as a whole, find that we have a fair assurance that the error did not
influence the jury or had but a slight effect, and thus hold that the error was
harmless.  See Tex. R. App. P.
44.2(b); Renteria v. State, 206 S.W.3d 689, 706 n.14 (Tex. Crim. App.
2006); McDonald v. State, 179 S.W.3d 571, 578 (Tex. Crim. App. 2005); Shuffield,
189 S.W.3d at 791; Haley v. State, 173 S.W.3d 510, 518 (Tex. Crim.
App. 2005); Hanson, 180 S.W.3d at 730.  Doe, eighteen years old at the
time of trial, testified clearly to Newton’s offenses.  Newton concedes that
Doe’s testimony was “compelling” and his attempted impeachment of her
“inefficacious,” and that the evidence of his guilt was “powerful.”  (Br. at 40.)





          [7] Newton argues that the State “waived” its argument that the evidence of which he complains
served to rebut the defensive theory that he “was the [v]ictim of a [f]rame-up.” 
(Br. at 21; see id. at 21-22.)  Newton does not argue that the State
waived the State’s fabrication argument.  We do not perceive the two arguments
to be distinct.





          [8] Newton argues that his cross-examination was “confined to issues brought up on direct
examination . . . by the State.”  (Br. at 24.)  If that contention is
correct, Newton cites no authority for the proposition that such
cross-examination could not raise a defensive issue.





          [9] Newton advanced the issue more directly in his argument.  There, Newton suggested that Doe
fabricated the allegation against Newton in order to prevent her mother’s
reconciliation with Newton, or did so at the prompting of her mother, since Doe
made her allegation immediately before her mother filed for divorce from Newton.  (See 6 R.R. at 104-110.)





          [10] Further,
were we to hold that the trial court erred, we would hold, after examining the
record as a whole, that we have a fair assurance that the error did not
influence the jury or had but a slight effect, and thus that the error was
harmless.  See Tex. R. App. P.
44.2(b); Renteria, 206 S.W.3d at 706 n.14; McDonald, 179 S.W.3d
at 578; Shuffield, 189 S.W.3d at 791; Haley, 173 S.W.3d at 518; Johnston,
145 S.W.3d at 224-25; Hanson, 180 S.W.3d at 730.  Doe testified clearly
to Newton’s offenses.  Newton concedes that Doe’s testimony was “compelling”
and his attempted impeachment of her “inefficacious,” and that the evidence of
his guilt was “powerful.”  (Br. at 40.)





          [11] We
assume without deciding that Newton preserved his Rule 403 objection: “We’re
going to throw in more prejudicial than probative.”  (4 R.R. at 68); see Tex. R. App. P. 33.1(a).  Nonetheless,
the trial court stated, “the 403, I’m considering that at the same time” as the
Rule 404 objection.  (4 R.R. at 90.)





          [12] Further,
were we to hold that the trial court erred, we would hold, after examining the
record as a whole, that we have a fair assurance that the error did not
influence the jury or had but a slight effect, and thus that the error was
harmless.  See Tex. R. App. P.
44.2(b); Renteria, 206 S.W.3d at 706 n.14; Shuffield, 189 S.W.3d
at 791; McDonald, 179 S.W.3d at 578; Prible, 175 S.W.3d at 737; Haley,
173 S.W.3d at 518; Hayes v. State, 85 S.W.3d 809, 816 (Tex. Crim.
App. 2002); Hanson, 180 S.W.3d at 730; Williams v. State, 27
S.W.3d 599, 603 (Tex. App.—Waco 2000, pet. ref’d); see Horton v. State, 986
S.W.2d 297, 303-304 (Tex. App.—Waco 1999, no pet.).  Doe testified clearly to Newton’s offenses.  Newton concedes that Doe’s testimony was “compelling” and his
attempted impeachment of her “inefficacious,” and that the evidence of his
guilt was “powerful.”  (Br. at 40.)  The State argued that the jury could
consider L. D.’s testimony for its bearing on Doe’s credibility, but did
not otherwise emphasize the testimony, and did not argue that the jury should
find Newton guilty directly because of Newton’s offenses against L. D. 
The trial court did not admit evidence of other extraneous offenses, and did
give careful limiting instructions.