Kenneth HOLDEN, Appellant,

v.

The STATE of Texas, Appellee.

No. 10–05–00242–CR.

Court of Appeals of Texas,
Waco.

Aug. 30, 2006.

---

Sandy S. Gately, Attorney At Law, Gatesville, for Appellant/Relator.

David A. Castillo, Coryell County District Atty., Gatesville, for Appellee/Respondent.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

FELIPE REYNA, Justice.

This case involves possession of a controlled substance. In two points, Appellant contends that the trial court erred by failing to suppress: (1) evidence seized without a search warrant; and (2) contents of a box discovered after the initial search. We affirm.

## BACKGROUND

Responding to a domestic disturbance call, Officer Mario Cantu, Jr. observed Kenneth Holden and Kandy Greenwood arguing. Cantu separated the parties and first spoke with Holden who said that a verbal disagreement, and no physical violence, had taken place. As evidenced by two packing containers located on the front porch, Holden wanted to continue collecting his belongings and leave. However, Holden agreed to remain until Cantu spoke with Greenwood. No one objected when Cantu entered the home or requested that he vacate the premises.

Inside the home, Greenwood too acknowledged that only a verbal, not physical, disagreement had occurred. During this conversation, Cantu visually scanned the home for potential weapons and signs of violence. He noticed a white cloth bag beside the front door. When Greenwood denied owning the bag, Cantu inspected it, felt potential drug paraphernalia and opened the bag, which held two syringes containing brown liquid and a spoon encrusted with a white substance. Greenwood denied ownership of these items. Cantu returned the bag to its original place, but heard someone briefly open the door behind him to retrieve the bag.

Cantu then went outside to question Holden. Upon Cantu's request, Holden retrieved the bag from his truck, but appeared surprised by the bag's contents and denied ownership. Holden agreed to a visual inspection of his arms, which revealed a scar on his right arm possibly caused by drug usage. Holden initially denied that Greenwood used drugs, but then stated she recently tested positive for drugs. Holden advised Cantu to check a box in the bedroom but refused to disclose its contents. He then vacated the premises.

Inside, Greenwood again denied ownership of the bag and reluctantly agreed to a search of the home. A search of the box in the bedroom revealed drug paraphernalia and narcotics. Greenwood denied knowledge of these items. Cantu seized the box, the bag, and their contents but did not arrest either Holden or Greenwood.

Holden filed a motion to suppress the items from the bag and box. At the hearing, Cantu testified that, in domestic disturbance cases, he customarily looks for weapons, signs of violence, and objects out of the ordinary. He further testified that the bag looked "out of the ordinary." A videotape from the night of the disturbance reflected that both Holden and Greenwood denied ownership of the bag.

The court denied Holden's motion to suppress. Holden pleaded guilty and the

court signed an order deferring adjudication for five years. Holden now appeals, arguing that his motion to suppress should have been granted.

## POINTS PRESENTED

In two points, Holden contends that: (1) the bag and its contents were improperly seized without a warrant; and (2) the box and its contents constitute fruit of the poisonous tree. The State responds that Holden lacks standing to even lodge these arguments. Therefore, we first address whether Holden possesses standing to complain.

## STANDARD OF REVIEW

■ We apply a bifurcated standard of review to the denial of a motion to suppress. *See Haas v. State*, 172 S.W.3d 42, 49 (Tex.App.-Waco 2005, pet ref'd). First, we review the denial for abuse of discretion. *See Oles v. State*, 993 S.W.2d 103, 106 (Tex.Crim.App.1999). Second, we conduct a *de novo* review of the law as applied to the facts. *See Haas*, 172 S.W.3d at 49; *see also Carmouche v. State*, 10 S.W.3d 323, 327 (Tex.Crim.App.2000); *Oles*, 993 S.W.2d at 106. The court's findings receive "almost total deference" and absent specific findings, we review the evidence in the "light most favorable" to the ruling. *See Haas*, 172 S.W.3d at 49; *Carmouche*, 10 S.W.3d at 327–328. The ruling will be affirmed if "reasonably supported by the record" and correct on any applicable legal theory. *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App.1990); *Cisneros v. State*, 165 S.W.3d 853, 856 (Tex.App.Texarkana 2005, no pet).

## STANDING

■ A party may challenge a search and seizure where he proves "an actual subjective expectation of privacy" that "society is prepared to recognize as objective-

ly reasonable." *Dominguez v. State*, 125 S.W.3d 755, 762 (Tex.App.-Houston [1st Dist.] 2003, pet ref'd); *see Villarreal v. State*, 935 S.W.2d 134, 138 (Tex.Crim.App. 1996). Because a party lacks a reasonable expectation of privacy in voluntarily abandoned property, he cannot contest a search of such property. *See Swearingen v. State*, 101 S.W.3d 89, 101 (Tex.Crim.App. 2003). Abandonment may be inferred from "words, acts, or other facts" and occurs where: (1) defendant intended to abandon the property, and (2) his decision to abandon the property was not due to police misconduct. *Id.; Dominguez*, 125 S.W.3d at 762. The proper inquiry is whether the defendant "voluntarily discarded, left behind, or otherwise relinquished his interest in the property" such that he no longer possesses a "reasonable expectation of privacy" in the property at the "time of the search." *McDuff v. State*, 939 S.W.2d 607, 616 (Tex.Crim.App.1997).

Unlike this case, typical abandonment cases involve *pre-search* denial of ownership. We note that the Beaumont Court found an owner's denial of ownership asserted after a search insufficient to negate standing. *See Franklin v. State*, 913 S.W.2d 234, 240–241 (Tex.App.-Beaumont 1995, pet ref'd). However, *Franklin* is distinguishable because it involved a third-party who was a stranger to the owner, who denied ownership and who lacked authority to consent to the search. *See id* at 237.

Here, we have a third-party homeowner/co-occupant who abandoned the property before the search. As a homeowner, Greenwood possessed authority to consent to a warrantless search. *See Hannon v. State*, 475 S.W.2d 800, 804 (Tex.Crim.App.1972). Even if a co-occupant with common authority, Greenwood may consent to a warrantless search, unless Holden was physically present and

refused consent. *See Georgia v. Randolph,* ——— U.S. ———, ———, 126 S.Ct. 1515, 1526, 164 L.Ed.2d 208, 226 (2006). By the same token, if Greenwood's *consent* binds Holden, so would her *abandonment.* In fact, in *Frazier v. Cupp,* the United States Supreme Court found no valid search and seizure claim because petitioner allowed "Rawls to use the bag and in leaving it in his house, must be taken to have assumed the risk that Rawls would allow someone else to look inside." 394 U.S. 731, 740, 89 S.Ct. 1420, 1425, 22 L.Ed.2d 684, 694 (1969); *see also Moreno v. State,* 987 S.W.2d 195, 204 (Tex.App.-Corpus Christi 1999, pet ref'd). The same concept applies here.

■ First, having left the bag inside Greenwood's home and walked away, Holden relinquished possession of the bag, assuming the risk that Greenwood might, even inadvertently, either allow or cause someone to view its contents. *See id.* Cantu first observed the bag lying beside the front door in Greenwood's home. Moreover, the bag lay in an open area of the home. When Greenwood denied ownership of the bag, Holden, who lodged no objections to Cantu's entry into the home, was not physically present. *See Randolph,* 126 S.Ct. at 1527, 164 L.Ed.2d at 226. At that moment, Cantu could reasonably conclude that because the homeowner denied ownership, he possessed authority to search the now disclaimed and abandoned property. Because Greenwood's abandonment essentially granted Cantu the authority to search the bag, just as if he had received her consent, he simply was not required to first "take affirmative steps to find a potentially objecting co-tenant." *Id.* at 1527.

Second, Holden's conduct reflects an *intent* to abandon. *See McDuff,* 939 S.W.2d

at 616. Before Cantu's arrival, Holden placed two packing containers outside, but left the bag inside. While Holden wanted to pack his possessions and leave the premises, he agreed to stay upon Cantu's request. Because Holden never indicated that any possessions remained inside the home, the trial court could have reasonably concluded that he would neither ask nor want to vacate the premises if he did not intend to leave any remaining possessions behind. *See Romero,* 800 S.W.2d at 543; *see also Cisneros,* 165 S.W.3d at 856. Even Holden's denial of ownership *after* the search confirms that he intended to disclaim his interest in the bag by voluntarily leaving it inside Greenwood's home. These facts support the "reasonable inference" that Holden intended to abandon the bag and did so voluntarily. *State v. Porter,* 940 S.W.2d 391, 394 (Tex.App.-Austin 1997, no writ); *see also Swearingen,* 101 S.W.3d at 101; *Dominguez,* 125 S.W.3d at 762.

Therefore, the trial court could have reasonably concluded that Holden abandoned the bag, which resulted in Holden's loss of a reasonable expectation of privacy in the bag at the time of the search. We hold that Holden lacks standing to contest the initial search of the bag and the subsequent search of the box. We overrule Holden's first and second points and affirm the judgment.

Chief Justice GRAY concurs in the judgment without a separate opinion.

Justice VANCE dissents with a note.*

---

* Note by Justice Vance: "I dissent. The evidence establishes Holden had not abandoned

the bag. Holden told Officer Cantu he had been living at the residence and he was in the process of packing his things and leaving. Two large containers (which Cantu assumed were Holden's) were on the front porch, and the gift bag and the cloth bag (a medium-sized cloth bag with a drawstring) were both inside, next to the front door. Cantu told Holden he could continue to pack but not to leave until Cantu had talked to Greenwood. When Greenwood told Cantu that the cloth bag was not hers, the only reasonable assumption remaining was that it belonged to Holden. When Cantu felt and searched the cloth bag, nothing had transpired to lead Cantu to conclude it had been abandoned; Holden had not left the premises, nor had he told the officer he had removed all of his posses-

sions from the residence. The inference that Holden had abandoned or intended to abandon the cloth bag is unreasonable—it is unsupported by the evidence and is illogical. And Holden's post-search denial of ownership of the cloth bag cannot substantiate abandonment and validate the prior illegal search. *See Franklin v. State*, 913 S.W.2d 234, 240–41 (Tex.App.-Beaumont 1995, pet. ref'd). I would instead hold that Holden had standing to contest the search of the cloth bag, that the warrantless search does not meet any exception to the warrant requirement, that the result of the subsequent search was the 'fruit of the poisonous tree,' and that the trial court abused its discretion in denying the motion to suppress."