**Xavier Barac LOPEZ, a/k/a Xavier Lopez, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**NUMBER 13–14–00753–CR**

Court of Appeals of Texas,
Corpus Christi-Edinburg.

Delivered and Filed March 24, 2016

Alfredo Padilla, Attorney at Law, Brownsville, TX, for Appellant

Luis V. Saenz, District Attorney, Rene B. Gonzalez, Assistant District Attorney, Brownsville, TX, for Appellee

Before Chief Justice Valdez and Justices Rodriguez and Garza

## OPINION

Opinion by Chief Justice Valdez

Appellant, Xavier Barac Lopez, a/k/a Xavier Lopez, was convicted of thirty-three counts of possession of child pornography, a third-degree felony, and the trial court sentenced him to concurrent five-year terms of confinement. *See* TEX. PENAL CODE ANN. § 43.26(a) (West, Westlaw through 2015 R.S.). By one issue, appellant contends that the trial court erred by denying his motion to suppress evidence discovered in his iPod. We affirm.

### I. BACKGROUND

Octavio Arriaga, a witness for the State, testified that he was the manager of a Dairy Queen where appellant worked and that appellant's responsibilities included, among other things, cleaning the bathrooms of the Dairy Queen. Arriaga stated that one evening after the store closed, he found an iPod in the men's bathroom, and when he "opened" the iPod to determine its ownership, he saw images of "naked children." Arriaga said that he immediately called his supervisor, who instructed him to leave the iPod in a safe so that another supervisor could locate it the following day to call the police. According to Arriaga, approximately ten minutes later, appellant returned to the store and asked whether Arriaga had found an iPod. Arriaga stated that he informed appellant that he had found the iPod but that appellant needed to talk to a supervisor named Myra Rodriguez the following day to get his iPod back.

Rodriguez testified that she arrived the following day, inspected the iPod, found that it contained pictures of little girls,

spoke to her supervisor, and then called the Brownsville Police Department. According to Rodriguez, a police officer arrived, filed her report, and left with the iPod. Rodriguez testified that although appellant came to work, he did not ask her about the iPod.

Nancy Garza Alaniz, a Brownsville police officer, testified that she had been dispatched to a Dairy Queen regarding an iPod and child pornography. Officer Alaniz stated that Rodriguez gave her the iPod, she interviewed Rodriguez, and filed her report. When Officer Alaniz arrived at the police station, she and her supervisor "opened" the iPod and documented that the iPod indicated that it contained 2,980 photos. Officer Alaniz had not obtained a search warrant prior to opening the iPod. During direct examination, when asked, "Did you view any photos on the iPod," Officer Alaniz replied, "When we were going through counting the files for the photographs, yes." On cross-examination, Officer Alaniz clarified that she had not been able to personally view all of the 2,980 photos on the iPod. Officer Alaniz noted that she did not know exactly how long she had observed the contents of the iPod but she recalled "it was very quick." Officer Alaniz then gave the iPod to David Navarro Jr., a detective with the Brownsville Police Department.

Detective Navarro testified that he obtained a search warrant based on Arriaga's and Rodriguez's statements concerning the nude pictures of children engaging in sexual positions or intercourse on the iPod. Detective Navarro sent the iPod to "Federal Agent HSI Joe Mirino" for an analysis of the iPod.[1] According to Detective Navarro, Mirino "was able to recover some nude images of children depicting them in sexual positions and some even having sex-

---

1. Mirino testified that he works for Homeland Security Investigations.

ual intercourse with adults." Detective Navarro stated that there were approximately 940 nude images recovered, and he believed "30–some were of children under the age of 17." Detective Navarro recalled that there were pictures of children on the iPod that were not child pornography. Agent Mirino testified that there were 2,980 photos on the iPod and that there were thirty-three images that constituted child pornography.

After Agent Mirino's testimony, appellant's trial counsel objected to the State's offer of the thirty-three photos it alleged constituted child pornography on the basis that Officer Alaniz testified that she opened the iPod prior to obtaining a warrant. The State responded that Officer Alaniz had not stated that she had viewed any child pornography on the iPod. Agreeing with the State, the trial court found that Detective Navarro based his warrant on Arriaga's and Rodriguez's statements that they had each viewed purported child pornography on the iPod.

After hearing all evidence, the jury convicted appellant of thirty-three counts of possession of child pornography. This appeal followed.

## II. STANDARD OF REVIEW AND APPLICABLE LAW

■ We review a trial court's ruling on a motion to suppress evidence for an abuse of discretion under a bifurcated standard. *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim.App.2010); *see State v. McLain*, 337 S.W.3d 268, 272 (Tex.Crim.App.2011). We give almost total deference to the trial court's findings of historical fact that are supported by the record and to mixed questions of law and fact that turn on an evaluation of credibility and demeanor. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim.App.2007) (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997) (en

banc)). We "review de novo 'mixed questions of law and fact' that do not depend upon credibility and demeanor." *Id.* (quoting *Montanez v. State*, 195 S.W.3d 101, 107 (Tex.Crim.App.2006)); *Guzman*, 955 S.W.2d at 89.

■ In our review, we must view the evidence in the light most favorable to the trial court's ruling. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex.Crim.App.2006). When the trial court has not made a finding on a relevant fact, we imply the finding that supports the trial court's ruling, as long as it is supported by the record. *Id.*

## III. LEGALITY OF THE SEARCH

Appellant contends that the trial court should have granted his motion to suppress the evidence obtained from his iPod at trial because the alleged images of child pornography were seized in violation of the Fourth Amendment of the United States Constitution due to an unreasonable search of his property. The State responds that the evidence was admissible under the independent source rule. We agree with the State that the trial court properly denied appellant's motion to suppress the evidence for the reasons explained below.

### A. The Independent Source Rule

■ The independent source rule is an exception to the exclusionary rule which applies in cases where police officers conduct an illegal search of premises or digital data but then obtain a warrant to search the same premises or digital data. *United States v. Runyan*, 290 F.3d 223, 237 (5th Cir.2002). In those situations, the initial illegal search does not automatically require suppression of the evidence if the magistrate could have issued the warrant on another basis which is not related to the initial illegal search. *See id.; see also Wehrenberg v. State*, 416 S.W.3d 458, 469

(Tex.Crim.App.2013) ("[T]he independent source doctrine provides that evidence actually obtained pursuant to a distinct, untainted source is not subject to suppression because, in such cases, the prior illegality does 'not contribute in any way to discovery of the evidence seized under the warrant.'").

The United States Supreme Court has explained the rationale for the independent source rule as follows:

"[T]he interest of society in deterring unlawful police conduct and the public interest in having juries receive all probative evidence of a crime are properly balanced by putting the police in the same, not a worse, position that they would have been in if no police error or misconduct had occurred.... When the challenged evidence has an independent source, exclusion of such evidence would put the police in a worse position than they would have been in absent any error or violation."

*Murray v. United States*, 487 U.S. 533, 537, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1988) (citing and quoting *Nix v. Williams*, 467 U.S. 431,443, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984)).

In *Runyan*, a police officer searched digital data contained in computer disks prior to obtaining a search warrant. 290 F.3d at 237. Subsequently, the police officer secured a warrant based on witnesses' testimony that the disks, among other things, contained child pornography. *Id.* The Court of Appeals for the Fifth Circuit, relying on *Murray*, held that admission of the evidence obtained during the illegal search was permissible because there was ample evidence that was independent of the officer's illegal conduct to establish probable cause for issuance of the warrant. *Runyan*, 290 F.3d at 237 (citing *Murray*, 487 U.S. at 537, 108 S.Ct. 2529). Thus, the warrant was valid. *Id.* The court made

this holding despite the fact that the police officer in his affidavit supporting the warrant request had mentioned that he had viewed child pornography on those devices prior to obtaining the warrant. *Id.*

The United States Supreme Court in *Murray* concluded that admission of evidence obtained during an illegal search of a warehouse did not necessarily violate the Fourth Amendment's prohibition on warrantless searches if the independent source rule applied. 487 U.S. at 543, 108 S.Ct. 2529. In *Murray*, police officers entered a warehouse without a warrant and found marihuana. *Id.* Subsequently, a magistrate issued a warrant to search the warehouse, and the police searched the warehouse again. *Id.* The defendant sought suppression of the marihuana on the basis of the initial warrantless search. *Id.* Relying on *Segura v. United States*, 468 U.S. 796, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984), among other cases, the *Murray* court explained that if the magistrate had issued the search warrant based on probable cause that was independent of the initial illegal search, the police officers' initial illegal search of the warehouse did not require suppression of the evidence. 487 U.S. at 543, 108 S.Ct. 2529. The *Murray* Court stated:

To apply what we have said to the present cases: Knowledge that the marijuana was in the warehouse was assuredly acquired at the time of the unlawful entry. But it was also acquired at the time of entry pursuant to the warrant, and if that later acquisition was not the result of the earlier entry there is no reason why the independent source doctrine should not apply. Invoking the exclusionary rule would put the police (and society) not in the same position they would have occupied if no violation occurred, but in a worse one.

. . .

The ultimate question, therefore, is whether the search pursuant to warrant was in fact a genuinely independent source of the information and tangible evidence at issue here. This would not have been the case if the agents' decision to seek the warrant was prompted by what they had seen during the initial entry, or if information obtained during that entry was presented to the Magistrate and affected his decision to issue the warrant.

*Id.* at 541, 108 S.Ct. 2529. However, the *Murray* Court found the lower court's findings insufficient and remanded the case to determine whether the "warrant-authorized search of the warehouse was an independent source of the challenged evidence." *Id.* at 543–44, 108 S.Ct. 2529.

In *Segura*, the police officers' illegal entry on private premises did not require suppression of evidence where police officers subsequently obtained a search warrant to search the same premises based on information acquired independently of the illegal initial entry. 468 U.S. at 814–16, 104 S.Ct. 3380. The *Segura* Court stated, "We granted certiorari to decide whether, because of an earlier illegal entry, the Fourth Amendment requires suppression of evidence seized later from a private residence pursuant to a valid search warrant which was issued on information obtained by the police before the entry into the residence." *Id.* at 797–98, 104 S.Ct. 3380. The Court explained that there were two questions to be determined: (1) "whether the entry and internal securing of the premises constituted an impermissible seizure of all the contents of the apartment, seen and unseen"; and (2) "whether the evidence first discovered during the search of the apartment pursuant to a valid warrant issued the day after the entry should have been suppressed as 'fruit' of the illegal entry." *Id.* at 798, 104 S.Ct. 3380. As to the first question, which is not

relevant to our analysis, the court answered, "No." *Id.* Regarding the second question, which is applicable to the facts of this case, the Court stated:

> The illegality of the initial entry . . . has no bearing on the second question. The resolution of this second question requires that we determine whether the initial entry tainted the discovery of the evidence now challenged. On this issue, we hold that the evidence discovered during the subsequent search of the apartment the following day pursuant to the valid search warrant issued wholly on information known to the officers before the entry into the apartment need not have been suppressed as "fruit" of the illegal entry because the warrant and the information on which it was based were unrelated to the entry and therefore constituted an independent source for the evidence under *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920).

*Id.* at 799, 104 S.Ct. 3380. The Court concluded that the evidence obtained by the police when they searched the premises pursuant to the warrant should not be suppressed, explaining that:

> None of the information on which the warrant was secured was derived from or related in any way to the initial entry into petitioners' apartment; the information came from sources wholly unconnected with the entry and was known to the agents well before the initial entry. No information obtained during the initial entry or occupation of the apartment was needed or used by the agents to secure the warrant. It is therefore beyond dispute that the information possessed by the agents before they entered the apartment constituted an independent source for the discovery and seizure of the evidence now challenged.

This evidence was discovered the day following the entry, during the search conducted under a valid warrant; it was the product of that search, wholly unrelated to the prior entry. The valid warrant search was a "means sufficiently distinguishable" to purge the evidence of any "taint" arising from the entry. *Id.* at 814, 104 S.Ct. 3380. In *Wehrenberg v. State,* the Texas Court of Criminal Appeals concluded that the independent source rule applies in Texas and that it does not circumvent Texas's statutory exclusionary rule under section 38.23 of the Texas Code of Criminal Procedure. 416 S.W.3d 458, 465–66 (Tex.Crim.App.2013) (concluding that evidence discovered and obtained pursuant to valid search warrant is not subject to suppression if police would have sought the warrant regardless of any observations made during the illegal entry despite prior unlawful police conduct) (citing *Segura,* 468 U.S. at 799, 104 S.Ct. 3380).

## B. Analysis

 On appeal, appellant complains that Officer Alaniz's search of his iPod was conducted without a warrant; thus, he argues that the State failed to meet its burden to show that an exception to the warrant requirement applied, and the trial court was required to suppress the thirty-three images of child pornography.[2] Appellant made the same argument to the trial court. However, in this case the State did obtain a warrant to search appellant's iPod subsequent to Officer Alaniz's search. And, based on the above-cited precedent, the mere fact that Officer Alaniz may have conducted an illegal search prior to the issuance of the search warrant does not necessarily require exclusion of the complained-of evidence under the Fourth Amendment. *See Murray,* 487 U.S. at 543, 545 n.1, 108 S.Ct. 2529 (Marshall, J., dissenting) ("The clearest case for the application of the independent source exception is when a wholly separate line of investigation, shielded from information gathered in an illegal search, turns up the same evidence through a separate, lawful search."); *Segura,* 468 U.S. at 813–17, 104 S.Ct. 3380; *Runyan,* 290 F.3d at 237. As explained above, when an illegal search precedes the acquisition of a warrant, the initial illegal search does not automatically invalidate the search conducted pursuant to a subsequently-acquired warrant. *See Murray,* 487 U.S. at 543, 108 S.Ct. 2529; *Segura,* 468 U.S. at 813–17, 104 S.Ct. 3380; *Runyan,* 290 F.3d at 237. In addition, the warrant is not necessarily invalid unless there is evidence that the warrant was completely based on the illegal search. *See Murray,* 487 U.S. at 543, 108 S.Ct. 2529; *Segura,* 468 U.S. at 813–17, 104 S.Ct. 3380; *Runyan,* 290 F.3d at 237. If, in fact, there is an independent reason for the warrant that is valid, then the prior illegal search does not require exclusion of the evidence subsequently acquired. *See Murray,* 487 U.S. at 543, 108 S.Ct. 2529; *Segura,* 468 U.S. at 813–17, 104 S.Ct. 3380; *Runyan,* 290 F.3d at 237.

Thus, even assuming, without deciding, that Officer Alaniz's initial search of the iPod was illegal, the subsequently-acquired warrant to search the iPod would have still been valid if Detective Navarro obtained the warrant based on information acquired independently of Officer Alaniz's initial search.[3] *See Murray,* 487 U.S. at 543, 108

---

**2.** We note that appellant did not make this specific argument to the trial court.

**3.** We note that the Fifth Circuit has held that when "a private individual examines the contents of a closed container, a subsequent search of the container by government officials does not constitute an unlawful search for purposes of the Fourth Amendment as long as the government search does not ex-

S.Ct. 2529 ("[W]hat counts is whether the actual illegal search had any effect in producing the warrant...."); *Segura*, 468 U.S. at 813–17, 104 S.Ct. 3380; *Runyan*, 290 F.3d at 237. Appellant did not argue to the trial court and does not argue on appeal that the warrant was in any way based on information acquired during Officer Alaniz's initial illegal search of his iPod.

█ And, at trial, appellant only argued that the thirty-three images found on his iPod were inadmissible on the basis that the warrant was invalid because Officer Alaniz opened the iPod prior to issuance of the search warrant. However, as explained above, the mere illegality of the initial search does not automatically make the warrant invalid. See *Murray*, 487 U.S. at 543, 108 S.Ct. 2529; *Segura*, 468 U.S. at 813–17, 104 S.Ct. 3380; *Runyan*, 290 F.3d at 237. There must have been evidence that no probable cause supported the warrant independent of Officer Alaniz's initial search. See *Runyan*, 290 F.3d at 237. And here, after hearing the evidence, the trial court found that the warrant was based on Arriaga's and Rodriguez's statements and not on anything acquired during Officer Alaniz's search.[4] Because this finding is supported by the record, and we must defer to the trial court's findings of fact, we cannot conclude that the trial court abused its discretion in making this finding. We conclude that the trial court did not abuse its discretion by denying appellant's motion to suppress on this basis.

## IV. ABANDONMENT

█ Moreover, we conclude that the trial court had another basis for denying appellant's motion to suppress.[5] The evidence shows that appellant accidently left his iPod at the Dairy Queen restroom. When appellant discovered that his iPod was missing, he returned to the Dairy Queen to recover it. Appellant asked Arriaga if he had found the iPod, and Arriaga stated that he had. Arriaga showed appellant the iPod, which appellant identified as his. Arriaga informed appellant that if he wanted his iPod, he needed to return the next day and speak with Rodriguez. However, according to Rodriguez, although she saw appellant at work the next day, he did not mention the iPod or request that she return the item to him.

Because a party lacks a reasonable expectation of privacy in voluntarily abandoned property, he cannot contest a search of such property. Abandonment may be inferred from "words, acts, or other facts" and occurs where: (1) defendant intended to abandon the property, and (2) his decision to abandon the property was not due to police misconduct. The proper inquiry is whether the defendant "voluntarily discarded, left behind, or otherwise relinquished his interest in the property" such that he no longer possesses a "reasonable expectation of privacy" in the property at the "time of the search."

*Holden v. State*, 205 S.W.3d 587, 589 (Tex. App.–Waco 2006, no pet.) (internal citations omitted).

---

ceed the scope of the private search." *United States v. Oliver*, 630 F.3d 397, 406 (5th Cir. 2011) (citing *Runyan*, 275 F.3d at 458 (assuming, because parties did not dispute it, that the electronic images were stored in "containers")).

4. Appellant did not challenge the validity of the warrant or the supporting affidavit on any other grounds at trial, and he does not do so on appeal.

5. *See State v. Ross*, 32 S.W.3d 853, 855–56 (Tex.Crim.App.2000) (explaining that the appellate court will uphold a trial court's ruling on a motion to suppress on any theory that is supported by the record even if the trial court stated the wrong reason).

■ Appellant's failure to ask Rodriguez to return the iPod shows that appellant intended to abandon the property, and there was no evidence that appellant's decision to abandon his iPod was due to police misconduct. *See id.* Accordingly, we conclude that due to appellant's voluntary discarding of his iPod, he no longer possessed a reasonable expectation of privacy in the iPod. See *id.* This implied finding of fact further supports the trial court's discretion to overrule appellant's objection to the iPod evidence. *See Crain,* 315 S.W.3d at 48; *Kelly,* 204 S.W.3d at 818. We overrule appellant's sole issue.

### V. Conclusion

We affirm the trial court's judgment.