

# NUMBER 13-16-00657-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

| | |
|---|---|
| **THE STATE OF TEXAS,** | **Appellant,** |
| **v.** | |
| **PATRICK KNESEK,** | **Appellee.** |

### On appeal from the 117th District Court
### of Nueces County, Texas.

# MEMORANDUM OPINION

### Before Justices Rodriguez, Contreras, and Benavides
### Memorandum Opinion by Justice Rodriguez

Appellee Patrick Knesek was indicted for possession of methamphetamine with

intent to deliver.[1]  Appellee moved to suppress the evidence that was seized from the

---

[1] Because the amount of methamphetamine was, by aggregate weight, four grams or more but less than 200 grams, the charged offense was a felony of the first degree.  *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(6), 481.112(a), (d) (West, Westlaw through Ch. 49, 2017 R.S.).

hotel room where he was arrested.   The trial court granted the motion, and the State filed this interlocutory appeal.[2]   By one issue, the State argues that the trial court abused its discretion in granting the motion to suppress.   We affirm.

## I.   BACKGROUND

Six witnesses testified at the suppression hearing:   Mike Mendez, a security guard at the Sun Suites hotel in Corpus Christi, who placed a call to 911 concerning suspicious activity in hotel room 127; appellee, who was found in room 127 and arrested on suspicion of possession of methamphetamine; and four police officers who investigated the call and arrested appellee:   Robert Cabello, Allen Miller, Matthew Razzo, and Krystal Rodriguez.

Following the hearing, the trial court entered findings of fact and conclusions of law.   As we explain, the findings are thorough and supported by the record.   From these findings, we distill the following facts:

At 3:18 a.m. on October 26, 2014, Mendez called 911 to report possible drug activity in room 127.   Mendez testified that for several days, he had been watching the occupants of the room with suspicion as they came and went.   The occupants were later identified as appellee and his friend Brandon Tedder, a co-defendant in the case.   On the night in question, Mendez found the door of room 127 open and the room vacant. He saw through the open door what appeared to be a bong sitting on a table.   The trial court found Mendez's testimony credible.

Officers Razzo and Rodriguez arrived at the hotel at 3:26 a.m.   The officers spoke with Mendez and then proceeded to room 127.   They found the door ajar, but not so far

---

[2] *See* TEX. CODE CRIM. PROC. ANN. art. 44.01(a)(5) (West, Westlaw through Ch. 49, 2017 R.S.).

open that they could observe anything within the room. Officer Razzo knocked on the door hard enough that it swung open, revealing a bong on a table. The trial court found that Officer Razzo did not simply intend to knock on the door to announce his presence; instead, based on acknowledgements made by Officers Razzo and Rodriguez that were captured on a body-microphone recording, the trial court found that Officer Razzo intended to open the door through the pretense of knocking.

The officers entered the room and found no one present. They inspected the bong, and Officer Razzo testified that he did not think that the bong contained any drug residue. Officer Razzo also inspected an auto insurance card he located among various papers on the bed. He obtained a name from the card—Brandon Tedder—and radioed the name in to dispatch at 3:34 a.m., whereupon he learned that Tedder had an extensive criminal history. The officers also saw several items on the floor, including luggage, duffel bags, power tools, and equipment. The trial court found that the officers did not seize any contraband or evidence, and they "made no attempt to secure the premises or obtain a search warrant before they closed the door to the room."

The officers met with Mendez and instructed him to call them when the two occupants returned so that the police could resume their investigation. Mendez had an ongoing working relationship with Officer Razzo, and he had Officer Razzo's personal cell phone number. The officers left at 3:46 a.m.

Approximately thirty minutes later, Mendez contacted Officer Razzo on his cell phone and also called 911 to report that the two individuals had returned to their room.

3

According to Mendez, the two individuals had double parked their car behind another vehicle directly in front of room 127.

The trial court found that room 127 was rented in Tedder's name, although both he and appellee "had been using the room for at least several days." According to the findings, both men "had numerous personal items in the room, both left the room together at approximately noon on October 25, 2014" to drive to Houston, and "both had returned to the room together shortly after 4:00 a.m. on October 26, 2014." Appellee testified that he made a lengthy use of the restroom upon their return.

At 4:24 a.m., three officers responded to Mendez's second call: Officers Cabello, Miller, and Rodriguez. Each of the officers testified that they observed nothing unlawful as they approached hotel room 127. The trial court found that the only knowledge that the officers had concerning any drug activity related back to the earlier entry by Officers Razzo and Rodriguez.

When the officers knocked, Tedder answered by opening the door "6–10 inches," according to the findings. The officers inquired about the double parked vehicle and then asked Tedder to step outside. Tedder squeezed out the hotel room door, "intentionally not opening it more than necessary to exit." As Tedder exited the room, officers asked if there was anyone else present. Tedder responded that there was. Officers instructed him to tell appellee to come out as well, and Tedder did so.

Tedder attempted to close the door as he exited the room, but an officer stuck out his foot to block the door from closing. Tedder was immediately patted down for weapons and handcuffed. As appellee neared the door, the door was pushed open, and

4

Officer Miller entered the room. No drug paraphernalia was visible to any of the officers until Officer Miller entered the room.

Officer Miller saw the bong over appellee's shoulder and moved to secure it. As Officer Miller entered, appellee was removed from the room, patted down, and handcuffed. When Officer Miller approached the table where the bong lay, he also noticed baggies containing what later was confirmed to be methamphetamine.

Tedder and appellee were placed in separate patrol units. Officer Cabello's dashboard camera was then activated, and the microphone worn by Officer Cabello began to record the officers' conversation. Shortly afterward, Officer Razzo arrived at the hotel. The officers discussed the previous entry into room 127 earlier that morning. They also discussed their suspicion that Tedder and appellee had committed burglaries and that there was stolen property in the room—in particular, the bags of power tools. The officers continued to discuss the incident and inspect the room for at least thirty minutes after Tedder and appellee were placed in the units.

Though Officer Razzo was present during both the first and second calls out to Sun Suites, he did not make a report of either incident. Similarly, Officer Rodriguez was present at both entries into room 127. However, in her report concerning the second entry into the room, Officer Rodriguez did not mention the first entry.

Officer Cabello called Agent Robert Larock and dictated various facts to be included in Larock's affidavit in support of a search warrant, which was obtained some hours later. Larock was not informed of the first entry into room 127, that suspected contraband was left in place in the room, or that the security guard was instructed to, and

5

did, call the officers back to the room a second time. This information was omitted from his affidavit.

The trial court found that none of the officers' testimony was credible. According to the trial court's findings, the officers "contradicted one another, claimed to not remember important details, and were impeached by glaring omissions in their testimony . . . ."

Based on these facts, the trial court concluded that multiple aspects of the officers' investigation, arrest, and seizure were unlawful, and the trial court entered other supporting conclusions. The court granted appellee's motion to suppress, and this interlocutory appeal followed.

## II. STANDARD OF REVIEW

We review a trial court's ruling on a motion to suppress evidence for an abuse of discretion under a bifurcated standard. *Lopez v. State*, 512 S.W.3d 416, 419 (Tex. App.—Corpus Christi 2016, no pet.). When the trial court makes express findings of fact in a suppression hearing, we afford almost total deference to those findings as long as they are supported by the record. *State v. Granville*, 423 S.W.3d 399, 404 (Tex. Crim. App. 2014). We apply the same standard when reviewing the trial judge's application of law to questions of fact when resolution of those questions depends on an assessment of credibility and demeanor. *Johnson v. State*, 414 S.W.3d 184, 192 (Tex. Crim. App. 2013). We apply a de novo standard of review to pure questions of law and to mixed questions of law and fact that do not depend on the evaluation of credibility and demeanor. *Id.* Whether the facts of the case, once determined, give rise to a

6

reasonable expectation of privacy is a question of law to be reviewed de novo. *State v. Hardy*, 963 S.W.2d 516, 523 (Tex. Crim. App. 1997) (en banc).

### III.    DISCUSSION

**A.    Standing**

On appeal, the State first challenges the trial court's conclusion that appellee had standing to challenge the legality of the searches of room 127. The State contends the hotel room was Tedder's alone, and appellee did not carry his burden to demonstrate that he had a reasonable expectation of privacy in Tedder's hotel room—a prerequisite for challenging the legality of the searches.

**1.    Applicable Law**

An accused has standing to challenge the admission of evidence obtained by an unlawful search or seizure only if he had a legitimate expectation of privacy in the place invaded. *Ex parte Moore*, 395 S.W.3d 152, 158 (Tex. Crim. App. 2013). To demonstrate standing, the accused bears the burden of establishing that he had a subjective expectation of privacy in the place searched that society is prepared to recognize as reasonable. *Granados v. State*, 85 S.W.3d 217, 223 (Tex. Crim. App. 2002).

A registered guest in a hotel room is entitled to constitutional protection against unreasonable searches and seizures. *Stoner v. California*, 376 U.S. 483, 490 (1964). Depending on the circumstances, visitors of the registered guest may also have standing. *See Moore*, 395 S.W.3d at 160. If the visitor is an overnight guest, the visitor has standing because the visitor shares the registered guest's reasonable expectation of

privacy in the room.  *Id.*  However, if the visitor is a casual guest who does not stay overnight, the visitor's standing will depend on the totality of the circumstances, including:

(1)     whether the accused had a property or possessory interest in the place invaded;

(2)     whether he was legitimately in the place invaded;

(3)     whether he had complete dominion or control and the right to exclude others;

(4)     whether, prior to the intrusion, he took normal precautions customarily taken by those seeking privacy;

(5)     whether he put the place to some private use; and

(6)     whether his claim of privacy is consistent with historical notions of privacy.

*Id.* at 159.   This list of factors is not exhaustive, and no one factor is dispositive.   *Id.*

## 2.     Analysis

The State submits that appellee failed to present any evidence to show that his status rose to the level of an overnight guest or that he otherwise had a legitimate privacy interest in the room.

In response, appellee asserts that his privacy interest was made manifest by his long term use of the hotel room, his placement of his personal effects in the room, and his intent to sleep in the room that night.[3]   We agree with appellee.   As the trial court found,

> Room 127 had been rented by Brandon Tedder although both he and defendant [appellee] had been using the room for at least several days. Both had numerous personal items in the room, both left the room together

---

[3] In the alternative, appellee contends that he has standing under article 14.05 of the Texas Code of Criminal Procedure.   TEX. CODE CRIM. PROC. ANN. art. 14.05 (West, Westlaw through Ch. 49, 2017 R.S.). Because we find appellee's first argument dispositive, we need not address his alternative argument.   *See* TEX. R. APP. P. 47.1

8

at approximately noon on October 25, 2014, and both had returned to the room together shortly after 4:00 a.m. on October 26, 2014.

The trial court ultimately concluded that both appellee and Tedder "had reasonable expectations to privacy in the hotel room they shared usage of, and, therefore, have standing to challenge the legality of the searches[.]"

First, the record supports the trial court's ruling that Tedder enjoyed a reasonable expectation of privacy in the hotel room. It is undisputed that Tedder had been a registered guest of the hotel for weeks. *See Stoner*, 376 U.S. at 490. The record also reveals other "objective indicia" of rightful privacy, such as the fact that Tedder had many "personal belongings" in the room, *see Moberg v. State*, 810 S.W.2d 190, 194 (Tex. Crim. App. 1991) (en banc), and that the curtains were drawn as officers approached the room. *See Smith v. State*, 176 S.W.3d 907, 914 (Tex. App.—Dallas 2005, pet. ref'd). Appellee testified that when Tedder opened the door, he was careful to avoid exposing the contents of the room to the police, opening the door only six to eight inches, blocking the officer's view with his body, and then sliding outside. In doing so, Tedder avoided compromising his privacy to the plain view of the officers. *See, e.g., Bouyer v. State*, 264 S.W.3d 265, 267 & 270 (Tex. App.—San Antonio 2008, no pet.).

Second, the record adequately supports the trial court's ruling that appellee was an overnight visitor who shared in Tedder's expectation of privacy. *See Moore*, 395 S.W.3d at 160. Appellee testified that he had regularly used the hotel room in the weeks prior to the arrest. Mendez and Officer Cabello testified that appellee had been intermittently staying with Tedder for weeks, such that Mendez and Officer Cabello viewed it not just as Tedder's room, but as "their room"—i.e., both Tedder and appellee's

9

room. *See Rakas v. Illinois*, 439 U.S. 128, 141 (1978) (interpreting *Jones v. United States*, 362 U.S. 257, 259 (1960) and citing Jones's routine prior use of his host's apartment as support for Jones's expectation of privacy).

The record also supports the view that appellee "intended to stay overnight" on the date of his arrest.[4] *See Moore*, 395 S.W.3d at 161. Before the two men left for Houston, appellee put a duffel bag with his personal effects in the room, including his laptop and a change of clothes. *See Minnesota v. Olson*, 495 U.S. 91, 97 n.6 (1990) (noting, with importance, the fact that appellant kept a change of clothes in the place invaded); *Moore*, 395 S.W.3d at 161 (emphasizing "personal belongings"). Upon his return, appellee made an undoubtedly private use of the hotel bathroom. *See Moore*, 395 S.W.3d at 159–60; *see also Giles v. State*, No. 08-01-00080-CR, 2003 WL 68178, at *3 (Tex. App.— El Paso Jan. 9, 2003, no pet.) (not designated for publication) (listing unrestricted access to host's bathroom among the circumstances that indicated overnight-guest status). Appellee testified that at the moment the police arrived, going to sleep for the night was an immediate possibility, and the timing of their arrival—around 4:30 a.m.—lends credence to that testimony. *See Moore*, 395 S.W.3d at 161; *cf. Weaver v. State*, 265 S.W.3d 523, 534 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd) (finding that appellant's nap in apartment at 5:00 p.m. did not establish status as overnight guest); *Johnson v. State*, No. 14-14-00358-CR, 2016 WL 836767, at *5 (Tex. App.—Houston [14th Dist.]

---

[4] Because there is evidence that appellee also intended to stay overnight on the date of his arrest— which the trial court found credible—we find this case distinguishable from the authority cited by the State: *Gouldsby v. State*, 202 S.W.3d 329, 335 (Tex. App.—Texarkana 2006, pet. ref'd) (rejecting a claim of standing where appellant relied solely upon testimony that he had intermittently stayed overnight in the past, and the trial court found much of this testimony unconvincing).

Mar. 3, 2016, no pet.) (not designated for publication) ("The officers searched [the hotel room where appellant was found] at approximately 12:30 in the afternoon, and that timing does not favor a suggestion that appellant had stayed overnight or that he intended to stay overnight.").

Based on the above, the record adequately supports the trial court's conclusions that appellee was Tedder's overnight guest, that appellee shared his host's reasonable expectation of privacy, and that appellee therefore had standing to challenge the warrantless search of his room. *See Moore*, 395 S.W.3d at 160; *Granados*, 85 S.W.3d at 223.

## B.     Legality of the Searches and Seizure

The State next argues that even if appellee had standing, the officers' search and seizure of contraband was lawful. Under the Fourth and Fourteenth Amendments, a search conducted without a warrant based on probable cause is per se unreasonable, subject only to a few specifically established and well-delineated exceptions. *Meekins v. State*, 340 S.W.3d 454, 458 (Tex. Crim. App. 2011).

The State argues that most of the officers' actions were justified by various exceptions to the warrant requirement and other rules of search and seizure—among them, rules relating to reliable citizen informants, "knock-and-talk" encounters, community caretaking functions, probable cause, independent sources and the attenuation of taint, the plain view exception, protective sweeps, searches incident to arrest, and the acceptable forms of information in search warrants.

11

However, the State does not argue that any exception or justification applies to a critical sequence of events which occurred during the officers' second visit to the Sun Suites hotel: the trial court found that after Tedder answered the door, he slid out from the narrow opening in the doorway and then tried to close the door behind him; however, "an officer impeded the door from closing," "the door was pushed open," and "Officer Miller entered the room"; Officer Miller then saw a bong on a table. "No drug paraphernalia was visible to any of the officers until Officer Miller entered the room." While the State offers myriad justifications relating to other aspects of the investigation, the State does not advance any justification for this sequence of events.

Instead, the State argues that these findings are ambiguous. According to the State, the quoted findings do not specifically say who pushed the door open wide enough for the police to see into the room: Officer Miller or appellee. The State urges us to resolve this ambiguity by remanding the matter to the trial court for further findings of fact to clarify who pushed open the door.

The finding in question is not ambiguous, and no remand is necessary. This finding reads: "As [appellee] neared the hotel door and/or began to exit, the door was *pushed* open and Officer Miller entered the room." (Emphasis added). If, as the State contends, the trial court meant that appellee opened the door, the operative verb would have been "pulled," given the layout of the room.

Moreover, the State neglects to mention two conclusions of law, which further clarify the sequence of events:

10. By pushing open the hotel room door, the officers are precluded from claiming they saw the bong pipe (or any contraband) in plain view.

12

11.    Officer Miller unlawfully entered the hotel room.

If the disputed finding is at all unclear about who pushed the door open, these conclusions make the trial court's view clear beyond doubt.

The State further argues that there was conflicting testimony on who opened the door.   However, the trial court unambiguously found that none of the officers' testimony was credible, including their testimony that appellee voluntarily swung the door open wide enough to give the officers a plain view of the contraband.   Instead, it is evident that the trial court believed appellee's testimony that officers prevented Tedder from closing the door, forced their way into the room, and immediately seized appellee and the contraband.   The record adequately supports this credibility determination, and we defer to it on appeal.   *See Granville*, 423 S.W.3d at 404.

Based on these facts, we determine that for purposes of the Fourth Amendment, a search was conducted when Officer Miller entered room 127.   *See Valtierra v. State*, 310 S.W.3d 442, 448 (Tex. Crim. App. 2010); *see also Buschardt v. State*, No. 05-11-00504-CR, 2012 WL 6035341, at *2 (Tex. App.—Dallas Dec. 5, 2012, pet. ref'd) (not designated for publication) (holding that "entry into a hotel room is a search for purposes of the Fourth Amendment," citing *Valtierra*).   This warrantless search led to the discovery and seizure of the methamphetamine.   The State does not advance any justification for these actions.   Without a warrant or any exception that would otherwise validate these steps, the search and seizure were per se unlawful, and suppression of the contraband was required.   *See Meekins*, 340 S.W.3d at 458.

C.    **Disposition**

13

Accordingly, the trial court did not abuse its discretion in granting suppression.

*See Lopez,* 512 S.W.3d at 419.   We overrule the State's sole issue on appeal.

### IV.    CONCLUSION

We affirm the ruling of the trial court.

NELDA V. RODRIGUEZ
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
3rd day of August, 2017.