

**NUMBER 13-16-00658-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**THE STATE OF TEXAS,** **Appellant,**

**v.**

**BRANDON TEDDER,** **Appellee.**

---

### On appeal from the 117th District Court
### of Nueces County, Texas.

---

# MEMORANDUM OPINION

### Before Justices Rodriguez, Contreras, and Hinojosa
### Memorandum Opinion by Justice Contreras

Appellee Brandon Tedder was indicted for possession of methamphetamine with intent to deliver, a first-degree felony. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 418.106(6), 481.112(a), (d) (West, Westlaw through 2017 1st C.S.). Tedder moved to suppress the evidence that was seized from the hotel room where he was arrested. The trial court granted Tedder's motion, and the State filed this interlocutory appeal. *See* TEX.

CODE CRIM. PROC. ANN. art. 44.01(a)(5) (West, Westlaw through 2017 1st C.S.). By one issue, the State argues that the trial court erred when it granted Tedder's motion to suppress.[1] We affirm.

## I. BACKGROUND[2]

Six witnesses testified at the suppression hearing: Mike Mendez, a security guard at the Sun Suites hotel in Corpus Christi, who placed a call to 911 concerning suspicious activity in hotel room 127; Patrick Knesek, a co-defendant who was with Tedder in room 127 and who was arrested on suspicion of possession of methamphetamine; and four police officers who investigated the call and arrested Tedder: Robert Cabello, Allen Miller, Matthew Razzo, and Krystal Rodriguez.

Following the hearing, the trial court entered findings of fact and conclusions of law. As we explain, the findings are thorough and supported by the record. From these findings, we distill the following facts:

At 3:18 a.m. on October 26, 2014, Mendez called 911 to report possible drug activity in room 127. Mendez testified that for several days, he had been watching the occupants of the room with suspicion as they came and went. The occupants were later identified as Tedder and his friend Knesek. On the night in question, Mendez found the

---

[1] Tedder did not file a responsive brief.

[2] Tedder was arrested along with Patrick Knesek, a co-defendant who is not a party to this appeal, and both men were indicted for possession of methamphetamine with intent to deliver. Both Tedder and Knesek filed motions to suppress the evidence, and, at a joint hearing before the trial court, they both argued that their search and arrest were illegal because they were done without probable cause and without a warrant. The trial court granted both motions. The State appealed the trial court's decision as to each, and this Court previously disposed of the State's interlocutory appeal concerning Knesek. *See State v. Knesek*, No. 13-16-00657-CR, 2017 WL 5184838 (Tex. App.—Corpus Christi Nov. 9, 2017, pet. denied) (mem. op., not designated for publication) (finding that the trial court did not abuse its discretion in granting Knesek's motion to suppress). The State makes the same arguments in this appeal as in Knesek's appeal, although the State does not dispute Tedder's standing to challenge the search. Because Tedder's situation is substantially the same as Knesek's, we adopt the relevant background and analysis from our memorandum opinion in Knesek's appeal, as set forth in this memorandum opinion. *See id.* at *1–3.

door of room 127 open and the room vacant. He saw through the open door what appeared to be a bong sitting on a table. The trial court found Mendez's testimony credible.

Officers Razzo and Rodriguez arrived at the hotel at 3:26 a.m. The officers spoke with Mendez and then proceeded to room 127. They found the door ajar, but not so far open that they could observe anything within the room. Officer Razzo knocked on the door hard enough that it swung open, revealing a bong on a table. The trial court found that Officer Razzo did not simply intend to knock on the door to announce his presence; instead, based on acknowledgements made by Officers Razzo and Rodriguez that were captured on a body-microphone recording, the trial court found that Officer Razzo intended to open the door through the pretense of knocking.

The officers entered the room and found no one present. They inspected the bong, and Officer Razzo testified that he did not think that the bong contained any drug residue. Officer Razzo also inspected an auto insurance card he located among various papers on the bed. He obtained Tedder's name from the card and radioed his name in to dispatch at 3:34 a.m., whereupon he learned that Tedder had an extensive criminal history. The officers also saw several items on the floor, including luggage, duffel bags, power tools, and equipment. The trial court found that the officers did not seize any contraband or evidence, and they "made no attempt to secure the premises or obtain a search warrant before they closed the door to the room."

The officers met with Mendez and instructed him to call them when the two occupants returned so that the police could resume their investigation. Mendez had an

3

ongoing working relationship with Officer Razzo, and he had Officer Razzo's personal cell phone number. The officers left at 3:46 a.m.

Approximately thirty minutes later, Mendez contacted Officer Razzo on his cell phone and also called 911 to report that the two individuals had returned to their room. According to Mendez, the two individuals had double parked their car behind another vehicle directly in front of room 127.

The trial court found that room 127 was rented in Tedder's name, although both Tedder and Knesek "had been using the room for at least several days." According to the findings, both men "had numerous personal items in the room, both left the room together at approximately noon on October 25, 2014" to drive to Houston, and "both had returned to the room together shortly after 4:00 a.m. on October 26, 2014."

At 4:24 a.m., three officers responded to Mendez's second call: Officers Cabello, Miller, and Rodriguez. Each of the officers testified that they observed nothing unlawful as they approached hotel room 127. The trial court found that the only knowledge that the officers had concerning any drug activity related back to the earlier entry by Officers Razzo and Rodriguez.

When the officers knocked, Tedder answered by opening the door "6–10 inches," according to the findings. The officers inquired about the double parked vehicle and then asked Tedder to step outside. Tedder squeezed out the hotel room door, "intentionally not opening it more than necessary to exit." As Tedder exited the room, officers asked if there was anyone else present. Tedder responded that there was. Officers instructed him to tell Knesek to come out as well, and Tedder did so.

4

Tedder attempted to close the door as he exited the room, but an officer stuck out his foot to block the door from closing. Tedder was immediately patted down for weapons and handcuffed. As Knesek neared the door, the door was pushed open, and Officer Miller entered the room. No drug paraphernalia was visible to any of the officers until Officer Miller entered the room.

Officer Miller saw the bong over Knesek's shoulder and moved to secure it. As Officer Miller entered, Knesek was removed from the room, patted down, and handcuffed. When Officer Miller approached the table where the bong lay, he also noticed baggies containing what later was confirmed to be methamphetamine.

Tedder and Knesek were placed in separate patrol units. Officer Cabello's dashboard camera was then activated, and the microphone worn by Officer Cabello began to record the officers' conversation. Shortly afterward, Officer Razzo arrived at the hotel. The officers discussed the previous entry into room 127 earlier that morning. They also discussed their suspicion that Tedder and Knesek had committed burglaries and that there was stolen property in the room—in particular, the bags of power tools. The officers continued to discuss the incident and inspect the room for at least thirty minutes after Tedder and Knesek were placed in the units.

Though Officer Razzo was present during both the first and second calls out to Sun Suites, he did not make a report of either incident. Similarly, Officer Rodriguez was present at both entries into room 127. However, in her report concerning the second entry into the room, Officer Rodriguez did not mention the first entry.

Officer Cabello called Agent Robert Larock and dictated various facts to be included in Larock's affidavit in support of a search warrant, which was obtained some

5

hours later. Agent Larock was not informed of the first entry into room 127, that suspected contraband was left in place in the room, or that the security guard was instructed to, and did, call the officers back to the room a second time. This information was omitted from his affidavit.

The trial court found that none of the officers' testimony was credible. According to the trial court's findings, the officers "contradicted one another, claimed to not remember important details, and were impeached by glaring omissions in their testimony . . . ."

Based on these facts, the trial court concluded that multiple aspects of the officers' investigation, arrest, and seizure were unlawful, and the trial court entered other supporting conclusions. The court granted Tedder's motion to suppress, and this interlocutory appeal followed.

## II. STANDARD OF REVIEW

We review a trial court's ruling on a motion to suppress evidence for an abuse of discretion under a bifurcated standard. *Lopez v. State*, 512 S.W.3d 416, 419 (Tex. App.—Corpus Christi 2016, no pet.). When the trial court makes express findings of fact in a suppression hearing, we afford almost total deference to those findings as long as they are supported by the record. *State v. Granville*, 423 S.W.3d 399, 404 (Tex. Crim. App. 2014). We apply the same standard when reviewing the trial judge's application of law to questions of fact when resolution of those questions depends on an assessment of credibility and demeanor. *Johnson v. State*, 414 S.W.3d 184, 192 (Tex. Crim. App. 2013). We apply a de novo standard of review to pure questions of law and to mixed questions of law and fact that do not depend on the evaluation of credibility and demeanor. *Id.*

6

### III. DISCUSSION

The State argues that the officers' search and seizure of contraband was lawful. Under the Fourth and Fourteenth Amendments, a search conducted without a warrant based on probable cause is per se unreasonable, subject only to a few specifically established and well-delineated exceptions. *Meekins v. State*, 340 S.W.3d 454, 458 (Tex. Crim. App. 2011).

We focus our attention on a critical sequence of events which occurred during the officers' second visit to the Sun Suites hotel: the trial court found that after Tedder answered the door, he slid out from the narrow opening in the doorway and then tried to close the door behind him; however, "an officer impeded the door from closing," "the door was pushed open," and "Officer Miller entered the room"; Officer Miller then saw a bong on a table. "No drug paraphernalia was visible to any of the officers until Officer Miller entered the room."

The State first argues that these findings are ambiguous. According to the State, the quoted findings do not specifically say who pushed the door open wide enough for the police to see into the room: Officer Miller or Knesek. The State urges us to resolve this ambiguity by remanding the matter to the trial court for further findings of fact to clarify who pushed open the door.

The finding in question is not ambiguous, and no remand is necessary. This finding reads: "As Knesek neared the hotel door and/or began to exit, the door was *pushed* open and Officer Miller entered the room." (Emphasis added). If, as the State contends, the trial court meant that Knesek opened the door, the operative verb would have been "pulled," given the layout of the room.

7

Moreover, the State neglects to mention two conclusions of law, which further clarify the sequence of events:

10. By pushing open the hotel room door, the officers are precluded from claiming they saw the bong pipe (or any contraband) in plain view.

11. Officer Miller unlawfully entered the hotel room.

If the disputed finding is at all unclear about who pushed the door open, these conclusions make the trial court's view clear beyond doubt.

The State further argues that there was conflicting testimony regarding who opened the door. However, the trial court unambiguously found that none of the officers' testimony was credible, including their testimony that Knesek voluntarily swung the door open wide enough to give the officers a plain view of the contraband. Instead, it is evident that the trial court believed Knesek's testimony that officers prevented Tedder from closing the door, forced their way into the room, and immediately seized Knesek and the contraband. The record adequately supports this credibility determination, and we defer to it on appeal. *See Granville*, 423 S.W.3d at 404.

Based on these facts, we determine that for purposes of the Fourth Amendment, a search was conducted when Officer Miller entered room 127. *See Valtierra v. State*, 310 S.W.3d 442, 448 (Tex. Crim. App. 2010); *see also Buschardt v. State*, No. 05-11-00504-CR, 2012 WL 6035341, at *2 (Tex. App.—Dallas Dec. 5, 2012, pet. ref'd) (mem. op., not designated for publication) (holding that "entry into a hotel room is a search for purposes of the Fourth Amendment," citing *Valtierra*). This warrantless search led to the discovery and seizure of the methamphetamine.

The State advances two theories in support of its argument that this search was lawful. The State first asserts that the officers' entry into the hotel room was justified as

8

a protective sweep of the premises, citing *United States v. Gould.* 364 F.3d 578, 584 (5th Cir. 2004), *abrogated on other grounds*, *Kentucky v. King*, 563 U.S. 452, 462 (2011). As an incident to a lawful arrest, officers may, as a precautionary matter and without probable cause or reasonable suspicion, look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched—known as a protective sweep. *Maryland v. Buie*, 494 U.S. 325, 334 (1990). However, *Gould* makes clear that for a protective sweep theory to apply, "the police must not have entered (or remained in) the home illegally . . . ." 364 F.3d at 587. Here, the question is whether the officers lawfully entered the hotel room in the first instance. A protective sweep theory gets the State no closer to demonstrating lawful entry. *See id.*

Next, the State contends that the officers' actions were justified by the good faith exception to the exclusionary rule under *McClintock v. State.* __ S.W.3d __ , __ , No. PD-1641-15, 2017 WL 1076289, at *7 (Tex. Crim. App. Mar. 22, 2017). Under the Texas exclusionary rule, no evidence illegally obtained by an officer shall be admitted in evidence against a criminal accused. TEX. CRIM. PROC. CODE. ANN. art. 38.23(a) (West, Westlaw through 2017 1st C.S.). It is an exception to the exclusionary rule "that the evidence was obtained by a law enforcement officer acting in objective good faith reliance upon a warrant issued by a neutral magistrate based on probable cause." *Id.* art. 38.23(b).

In *McClintock*, the court of criminal appeals addressed the scope of the good-faith exception to the Texas exclusionary rule. __ S.W.3d at __ , 2017 WL 1076289, at *7. Officers obtained a search warrant based on a canine sniff of an apartment's curtilage, which they believed in good faith to be legal; but during the pendency of the appeal,

9

similar sniffs were held illegal. *Id.* at __ , 2017 WL 1076289, at *1 (citing *Florida v. Jardines*, 569 U.S. 1 (2013)). The *McClintock* court addressed a complex question: (1) when police obtain information illegally but in good faith, and (2) that information serves as the basis for a search warrant, and (3) the warrant leads to the discovery of evidence, is that evidence subject to exclusion? *See id.* The court held that the evidence was not subject to exclusion, provided that the police conduct that uncovered the information used in the warrant affidavit was "close enough to the line of validity" that an objectively reasonable officer would believe that the information supporting the warrant was not tainted by unconstitutional conduct. *Id.* at __ , 2017 WL 1076289, at *7 (quoting *United States v. Massi*, 761 F.3d 512, 528 (5th Cir. 2014)).

We find the good faith exception to the exclusionary rule inapplicable here. *McClintock* addresses "evidence obtained as the result of the execution of a search warrant." *Id.* at __ , 2017 WL 1076289, at *6. Here, the contraband was obtained as the result of officers' warrantless searches of Tedder's hotel room, which occurred well before the warrant was issued. Under the circumstances of this case, a reasonable search's true "line of validity" would have been the prior issuance of a warrant, and the circumstances which are "close enough" to pass constitutional muster are the specifically established and well-delineated exceptions to the warrant requirement. *See Meekins*, 340 S.W.3d at 458. None of those exceptions apply here.

Without a warrant or any exception that would otherwise validate these steps, the search and seizure was per se unlawful, and suppression of the contraband was required. *See id.* Accordingly, the trial court did not abuse its discretion in granting suppression. *See Lopez*, 512 S.W.3d at 419.

We overrule the State's sole issue on appeal.

## IV. CONCLUSION

We affirm the trial court's judgment.

DORI CONTRERAS
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
15th day of March, 2018.